## A. RICHARDSON v. J. M. FENNER, Tutor.

The drawer cannot dispute the plaintiff's ownership of the bill sued on, where he is permitted to plead all the equities that he has against any of the successive holders, and where it is neither alleged nor shown that the plaintiff came unfairly by the bill, or that any other party contests his right to it.

An amendment to a petition may be allowed when the relief prayed for, is additional only, and where it does not change the cause of action.

All the circumstances in evidence must be considered, in testing the liability of the drawer of a bill, who pleads his discharge, by reason of the *laches* of the payee or subsequent holder in presenting it to the drawee.

APPEAL from the District Court of Ouachita, *R. W. Richardson*, J. *Garrett & Ludeling*, for plaintiff. *J. D. & J. McEnery*, for defendant and appellant.

SPOFFORD, J. The plaintiff, as holder, sued the defendant as drawer of the following bill of exchange, which was protested on the 20th of May, 1848, at New Orleans:

"$350.  MONROE, La., February 14, 1848.

Messrs. *Gardner & Norcomb*,

At sight, please pay to *E. A. Brown*, or order, the sum of three hundred and fifty dollars, for value received, and charge the same to the account of estate of *Frautom*.

(Signed)  JOHN M. FENNER, Tutor.

Endorsed,  E. A. BROWN."

The defendant appears in the original petition, to have been sued as tutor of the heirs of *Frautom*, although judgment was not asked against him distinctly in that capacity.

He answered, admitting his capacity and the drawing of the draft, but averred that the drawees, at its date, had cotton funds enough in their hands, belonging to respondent, as tutor, to meet the draft; and that they failed on or about the 10th of May, 1848, owing him, as tutor, $2,700; that if the draft had been promptly presented, it would have been paid; and that it had been lost through the negligence of the holder. He denied that the draft had been put in circulation, or that plaintiff was owner of it, alleging the same to belong to the estate of the payee, *Brown*. To prove the latter allegations, he propounded interrogatories to the plaintiff.

More than a year after the filing of the original petition, the plaintiff offered an amended petition, in which he alleged that, since the suit was instituted, defendant had filed his final account as tutor, and made a settlement with several of the heirs of *Frautom*, and was no longer entitled to represent them in the suit; that he had actually obtained a credit for the amount of the draft sued on, in his accounts with the heirs, as also for the whole balance due by *Gardner & Norcomb*, and had thereby made the debt his own, if it was not so originally; the plaintiff, therefore, prayed judgment against the defendant personally, as well as in his capacity of tutor.

The defendant excepted to the ruling of the Judge, allowing this amended petition to be filed, on the ground that it came too late, and changed the nature of the action.

RICHARDSON
v.
FENNER.

At the trial, there was judgment against *Fenner* personally, for the amount of the draft, and judgment in favor of the heirs of *Frautom.*

*Fenner* has appealed, and in this court urges, that the plaintiff cannot recover : 1st. Because he is not proved to be the owner of the draft ; 2d. Because the court below erred in admitting the amended petition ; and 3d. Because the drawer of the draft is released by reason of the *laches* of the holder, who failed to present it seasonably for payment.

I. As to the first ground of defence, it may be said that the defendant has alleged no such state of facts as entitles him to dispute the plaintiff's ownership of the draft sued on. All the equities that he has against any of the successive holders, he has been permitted to plead ; and it is not alleged or shown, that the plaintiff came unfairly by it, or that any other party contests his right to the draft. It is thus immaterial to the defendant, whether the plaintiff is the real owner or not ; a judgment between these parties will be final. *Boswell* v. *Zeuder,* 13 La. 367. *Mitaine* v. *Ferguson,* 18 La. 94. *Newton* v. *Turner,* 5 La. 48. *Banks* v. *Eastin,* 3 N. S. 291.

II. The amended petition was objected to, because it cames too late and changed the issue. The former objection seems to be abandoned here, but the latter is strenuously urged.

We are of opinion, that the Judge did not err in allowing the amendment. Amendments should be permitted, when they can cause no injury to the opposite party, and will tend to prevent a multiplicity of suits. *Jelks* v. *Smith,* 5 An. 674. One of the tests of the propriety of a proposed amendment, is to inquire whether it might have been cumulated with the original pleading. *Bauduc* v. *Domingue,* 8 N. S. 438.

Here it would seem that *Fenner* might have been sued both as tutor and personally, upon the allegations made. The amendment prays only for an additional relief, and does not change the cause of action which is still the alleged liability of the drawee of a bill of exchange. *Castille* v. *Dumartrait,* 5 N. S. 70. See also *Russell* v. *Cash,* 2 La. 187.

III. Is the defendant discharged by reason of the *laches* of the payee or any subsequent holder, in presenting it to the drawees ?

The rule is, that the bill should be presented within a reasonable time ; what constitutes a reasonable time, is a mixed question of law and fact to be determined upon by the circumstances of each particular case. Story's Bills, § 231. Pothier de Change, No. 143. *Bolton* v. *Harrod,* 9 M. 346. *Hill* v. *Martin,* 12 M. 177.

The holder of a sight draft should not put it in his pocket and delay presentment unnecessarily, confiding in the solvency of the drawee ; if he do so, and there is a loss in consequence thereof, he must bear it, and the drawer will be discharged.

But the bill may be put in circulation, and, in that case, much time may elapse whilst it is passing from hand to hand, before presentment, without releasing the drawer.

In this instance, a little upwards of three months elapsed, and the drawees meanwhile failed.

But the circumstances in evidence must be considered, in testing the liability of the drawer.

In the first place, he drew the bill at Monroe, an inland town in Louisiana, remote from New Orleans, the place of payment.

In the next place, he drew it in favor of *E. A. Brown*, or order, *Brown* being, at the time, at his residence in Lawrence county, in the western part of the State of Missouri. It is also probable from all the circumstances, that the drawer was at the time aware of the fact, that the bill would have to be remitted to *Brown*, at his distant residence, for his endorsement, before payment could be demanded of the drawees. The draft was so remitted.

The drawer was a planter; the drawees were his commission merchants, and the payee was a dealer in horses, which formed the consideration of the draft.

Again: after *Brown* had endorsed the bill in western Missouri, it was sent to the city of St. Louis, to the house of *Davis, Tilden & Richards*. They endorsed it over to the firm of *Price & Forst*, of the same residence. *Price & Frost* sent it to New Orleans, where it was protested for non-payment. The bill would therefore appear to have been in circulation, and no positive evidence is adduced to rebut the presumption thus raised, or to show that it was held by either one of these parties, an unnecessary length of time.

Upon this state of facts, we are not prepared to say, that there was such a lack of diligence as to discharge the drawer.

We add, that there seems to be little equity in the defence which *Fenner* set up against his personal liability. For it seems that he has finally settled his accounts with his wards, and been credited in the settlement, not only with the amount of their funds lost by the failure of *Gardner & Norcomb*, the drawees, but also with the amount of this draft, as so much paid to *E. A. Brown*, for horses for the *Frautom* estate.

The judgment is therefore affirmed, with costs.