### CITY OF COLUMBUS *v.* ANGLIN.

120 785
Case 2
121 268
121 386
o121 463
120 785
Case 2
122 17
f123 30
123 89
123 335
123 663
123 702

120 785
125 84
125 727

120 785
Case 2
127 197
s128 469
128 605

1. The allegations of the petition were sufficient, as against demurrer, to show that the acts of negligence set out were the proximate cause of the injuries for which a recovery was sought.
2. Keeping its sidewalks reasonably safe is the duty of a municipal corporation relatively not only to travelers, but to any person lawfully upon a sidewalk, using it for any purpose for which sidewalks are designed.
3. An amendment to a petition is not too late when offered before the case has been submitted to the jury.
4. Relatively to the law of pleading, a cause of action is some particular right of the plaintiff against the defendant, together with some definite violation of that right.
5. No new and distinct cause of action is added to a petition by an amendment which contains additional matter descriptive of the same wrong pleaded in the original petition, and which does not plead any other or different wrong. *Central R. Co.* v. *Wood*, 51 *Ga.* 515; *Skidaway S. R. Co.* v. *O'Brien*, 73 *Ga.* 655; *Henderson* v. *Central Railroad Co.*, 73 *Ga.* 718; *Cox* v. *Murphey*, 82 *Ga.* 623; *Roughton* v. *Georgia R. Co.*, 109 *Ga.* 604, overruled in so far as they conflict with the above.

120
Cas
f129
129
f129
f129
130

50

6. Where, in an action ex delicto, the petition sets out certain acts of negligence, to show a violation by defendant of the plaintiff's right, such petition may be amended by setting out additional acts of negligence to show substantially the same violation of the same right.

7. On the trial of an issue as to whether the material in a sidewalk was unfit for the purpose, and therefore was washed out by ponded surface-water, leaving a hole, evidence that subsequently the rain washed another hole in the same sidewalk, under similar conditions, was relevant.

8. It is error for a trial judge, after an expert witness has testified, to ask him questions so framed as to intimate an opinion that the testimony of the witness is improbable or erroneous.

9. A municipal corporation is not liable for injuries occasioned by defects in one of its sidewalks, when such defects were not brought about by its negligence, and were latent defects which could not have been discovered by the use of ordinary care and diligence.

10. The municipal corporation is not liable for injuries which, not being traceable to any negligence upon the part of either plaintiff or defendant, were relatively to them the result of accident.

11. Where the plaintiff seeks to recover on one or more of several theories of negligence, there is no error in refusing to give charges which, though sound as to one such theory, altogether exclude another on which a recovery might properly be based.

12. Where an action is brought against a municipal corporation for personal injuries resulting from a negligent failure to keep its sidewalks reasonably safe from an insecure overhanging shed which it was its duty to have inspected, there is no error in refusing to charge that the same duty rested upon plaintiff and defendant, and that any defects in the shed which would have been notice to the defendant would also have been notice to the plaintiff.

13. Where it appears that the plaintiff's husband was the tenant of the building in front of which the shed was situated, but it does not appear on whom rested the duty of repairing the shed, there is no error in refusing to charge that it was the duty of the plaintiff and her family to take care of the shed and keep it in repair.

14. In an action against a municipal corporation for personal injuries resulting from the falling of a shed over a sidewalk, it is not error to refuse to charge that the plaintiff can not recover if she was guilty of any contributory negligence.

15. There is no error in refusing to give charges requested which, in so far as sound and applicable to the case, are covered fully by the charge given.

16. While the charge of the court was not altogether accurate, there was no material error therein in any of the particulars indicated by the assignments of error.

Argued December 16, 1903.   Reargued June 17, — Decided August 10, 1904.

Action for damages.    Before Judge Butt.    Muscogee superior court.    June 8, 1903.

*T. T. Miller,* for plaintiff in error.
*Hatcher & Carson,* contra.

SIMMONS, C. J.    Suit was brought by Mrs. Anglin against the City of Columbus, for damages for personal injuries. The petition alleged, that the municipal authorities had changed the grade of a certain street and put insufficient drains therein, so that the sur-face-water was allowed to pond near and upon the sidewalk and cause a washout, which the municipal authorities negligently filled with material which was not suited to the purpose and which they knew was unsuitable; that by these negligent acts the sup-ports of a shed over the sidewalk were caused to settle, and, as a result, the shed, which was built of wood and in sound physical condition, fell upon the plaintiff and injured her.    The petition also alleged that the plaintiff was entirely free from fault.    To this petition the defendant demurred.   The court overruled the de-murrers, and the defendant excepted pendente lite.    When the case came on for trial, the plaintiff offered to amend her petition by alleging, that the shed in question was dangerous and liable to fall, and that plaintiff had no knowledge of this fact and could not have ascertained the same by reasonable diligence; that it was defendant's duty to keep its streets safe, to inspect sheds over the sidewalks, and to remove such sheds as might be dangerous and liable to fall; that this shed had stood over the sidewalk for twenty years, and defendant had knowledge of its defective condi-tion and liability to fall, or could have discovered the same by the exercise of reasonable diligence in inspecting; that defendant failed in this duty and " permitted said street to be dangerous by allow-ing said shed to stand ;" and that "from said neglect of duty said shed fell in and upon the plaintiff and without fault or negligence upon her part, and injured and damaged her " in a named sum. The defendant objected to the allowance of this amendment, on the grounds that it came too late, and that it introduced a new and distinct cause of action.    The court overruled the objections and allowed the amendment; to which ruling the defendant ex-cepted pendente lite.   Upon the trial the jury failed to agree, and the court ordered a mistrial.   Upon the second trial the evidence showed that the shed which fell upon plaintiff was over the side-walk in front of a store rented and run by her husband.    The shed had stood for a number of years, but its timbers were sound at the time it fell.    The shed was supported at its outer edge by three posts, while the inner side was nailed to the house or store,

most of the nails being driven through a plate of the shed into a strip of weatherboarding on the house. This was not a proper or secure fastening, but the defect was not such as to be apparent to a casual observer; a competent man could have ascertained it by going up and looking at it closely; but an inspector going around could not have discovered the defect, unless he made a critical examination of the shed. An ordinance introduced in evidence made it the duty of one of defendant's officers "from time to time to carefully examine" all such sheds within certain limits, and it was admitted that the shed here involved was within such limits. The defendant had changed the grade of a near-by street which intersected that on which the shed stood, and had put in a box-drain to take off the surface-water. This drain had been allowed to get out of repair and become obstructed, so that, in times of heavy rain, the surface-water ponded near and upon the sidewalk and under the shed and near its supporting posts. A hole had been washed out in the sidewalk, near the foot of one of the posts, and this hole had been filled with a certain red sand, which, according to some of the evidence, was unfit for the purpose, being liable to wash out and affording insufficient resistance. The drain continued out of repair, so that in times of heavy rain the sidewalk was flooded and part of the red sand washed away. As to the effect of the surface-water and the red sand upon the stability of the posts, the witnesses were not agreed, though the weight of the evidence was that these things had not affected the efficacy of the posts to carry a load imposed vertically upon them. After the shed had fallen, it was found that one of the corner posts had "kicked in," the earth between it and the old washout having given way and allowed the post to fall outward, away from the perpendicular. The shed fell shortly after a heavy rain, and fell suddenly and without warning, all of it that fell coming down at practically the same time. It appeared that the plaintiff had wished to visit some friends and had gone out on the sidewalk to see if it looked like rain. There was a chair on the sidewalk, and she "sat down in it for a second or two and decided it was clear enough." She got up to go into the house, but as she reached the door the shed fell and struck her in the back, inflicting very serious injuries.

The jury returned a verdict against the defendant for $2,500.

The defendant moved for a new trial. The original motion contained three grounds, while by amendment fifty-seven others were added. The trial judge overruled the motion and the defendant excepted, assigning error upon the refusal to grant a new trial, and upon the exceptions pendente lite to which reference has already been made.

1. In support of the demurrer to the petition, it was argued that no cause of action was set forth by the petition, for the reason that the alleged acts of negligence were not the proximate cause of the plaintiff's injuries. With this we can not agree. The petition alleged that the injuries resulted from such acts of negligence, and there is nothing in the petition to show the contrary. As against a demurrer, the allegations were clearly sufficient to sustain the plaintiff's theory.

2. It was also argued that the duty of the defendant to keep its sidewalks in reasonably safe condition extends to such persons only as are "travelers" in the usual modes, and that the petition showed that the plaintiff was not using the sidewalk for travel at the time of her injury. In the first place, while the petition sufficiently shows that the plaintiff was upon the sidewalk and under the shed, it does not show whether or not she was using the sidewalk for travel. Even if it had appeared that she was not actually using the sidewalk to travel up or down the street, we think the city would still have owed her the same duty if she was lawfully upon the sidewalk and using it for any purpose for which sidewalks are designed. *City Council of Augusta* v. *Tharpe*, 113 *Ga.* 152. See also *Mayor of Jackson* v. *Boone*, 93 *Ga.* 662. The other grounds of the demurrer were not insisted upon.

3, 4, 5. The exceptions to the allowance of the amendment raise a much more difficult question. Our Civil Code provides (§ 5097), that "all parties . . may, at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by;" but that (§ 5099) "no amendment adding a new and distinct cause of action, or new and distinct parties, shall be allowed unless expressly provided for by law." While some limitation has been placed, in point of time, upon the right to amend,—as that a declaration can not be amended after

judgment (*Southern Mut. Ins. Co.* v. *Turnley*, 100 *Ga.* 297),—
we are clear that the amendment in the present case did not come
"too late." It was made, not only before verdict, but before the
submission of the case to the jury.

In determining whether an amendment added a new and dis-
tinct cause of action, this court has not been uniform in its de-
cisions, as will be seen from a comparison of *Harris* v. *Central*
*Railroad,* 78 *Ga.* 525, and *Ga. R. Co.* v. *Roughton,* 109 *Ga.* 604.
Finding an irreconcilable conflict in the decisions, we ordered the
present case reargued upon this question, and gave permission for
the review of all the Georgia cases upon the subject, in order that
the errors in some of the decisions might be corrected and the
inconsistencies removed. The question necessitates a considera-
tion of the meaning of the phrase "cause of action." The abstract
and primary rights and duties of men are determined by the sub-
stantive law, which is ever in operation, but no action can be
based upon substantive law alone. When there is an *invasion* of
primary rights, then and not until then, the adjective or remedial
law becomes operative, and under it arise rights of action. There
can be no right of action until there has been a wrong,—a
violation of a legal right,—and it is then given by the adjec-
tive law. Upon the commission of the wrong, a right of action
is given by the adjective law. "For every violation of a con-
tract express or implied, and for every injury done by another to
person or property, the law gives a right to recover, and a remedy
to enforce it." Civil Code, § 3076. Thus, "relatively to the law
of pleading, a cause of action is some particular legal duty of the
defendant to the plaintiff, together with some definite breach of
that duty which occasions loss or damage." *Ellison* v. *Ga. R. Co.,*
87 *Ga.* 699. Yet, as "every duty is attended with a correlative
right, a cause of action may be defined from the standpoint of
rights, with exactly the same result as when it is defined from the
standpoint of duties. Thus the precise equivalent of the defini-
tion given above would be this: Relatively to the law of plead-
ing, a cause of action is some particular right of the plaintiff
against the defendant, together with some definite violation there-
of which occasions loss or damage." Ibid. 700. To give a right
of action, "nothing is needed but a right in the plaintiff and some
invasion of that right by the defendant." *Stafford* v. *Maddox,*

87 *Ga.* 540. Nor can the latter be shown unless the former appear. "Though it is the breach and not the duty itself which justifies the action or causes it to be brought, yet every breach involves a duty, and in order to make the breach appear, it is indispensable that the duty also should appear. In so far as the duty in question can be known to the court by taking notice of any matter of public law, its creation or origin need not be pleaded; but in so far as it derives its origin from any special state of facts, . . the essential facts must be pleaded." *Ellison's* case, supra. "A wrong in every case implies a cause for action, and vice versa. . . Is not the wrong, then, on the basis of legal principle, beyond question identified as the cause? By force of the law of remedy, upon its commission there arises a right *to* action, and when properly shown by the facts it becomes to a court the sufficient cause *for* action." Sibley, Right to and Cause for Action, 28. Where the right violated is one which must be shown by stating the facts,— a right which derives its origin from a special state of facts,— the wrong can not be shown without stating the essential facts in which the right originates. In other cases the creation or origin of the right need not be pleaded. Hence, for our present purposes, it is immaterial whether the cause of action be regarded as the right and its violation, or as the wrong.

As we have seen, the cause of action arises under the remedial law, which does not become operative until there has been a wrong,— a violation of a legal right. The same legal right may be more than once violated, and each violation may give rise to a new and distinct cause of action. But a wrong can not in a legal sense be a violation of more than one right. The same *act* may violate any number of rights, but each such violation would constitute a different *wrong*. If such violations of wrongs are distinct and separate, even though resulting from the same act, they would give rise to different causes of action; but from a single wrong but one cause of action can arise. So long as a plaintiff pleads but one wrong, he does not set up more than one cause of action. Courts will look to the allegations both as to the primary right of the plaintiff and the corresponding primary duty of the defendant, and as to the violation or breach thereof, in order to determine whether it is the intention to plead but a·

single wrong only, or more than one. A single wrong may, how-
ever, be composed of numerous elements and shown by various
facts. Facts, alone or in conjunction with purely substantive
law, do not give a right of action, but are alleged in order to show
a wrong which has called into operation the remedial law which
gives the right of action. The facts are merely the means, and
not the end. They do not constitute the cause of action, but
they show its existence by making the wrong appear. "The
*thing,* therefore, which in contemplation of law as its *cause,* be-
comes a ground for action, is *not* the group of *facts* alleged in a
declaration, bill, or indictment, *but the result of these in a legal
wrong, the existence of which, if true, they conclusively evince.*"
Sibley, Right to and Cause for Action, 48. Different facts may
be alleged, separately or cumulatively, to show the same wrong,
and the number and variety of the facts alleged will not make
more than one cause of action, so long as but one wrong is shown.
A single wrong will not be made plural by alleging that it is
made up of a number of constituent parts.

After a petition has been filed, the plaintiff has no right to
amend it so as to add a new and distinct cause of action. The
application of this rule has brought confusion into the decisions
of this court as to the allowance of amendments, and has also
given trouble in other jurisdictions in which the same rule pre-
vails. A number of tests have been suggested for determining
whether an amendment adds a new cause of action. One general
test is said to be, "whether the proposed amendment is a differ-
ent matter, another subject of controversy, or the same matter
more fully or differently laid to meet the possible scope and vary-
ing phases of the testimony." 1 Enc. Pl. & Pr. 564. Other tests,
some of them admittedly fallible, have been suggested in different
cases, as (1) whether the original petition and the amendment
would be subject to the same plea (Goddard *v.* Perkins, 9 N. H.
438); (2) whether the same evidence would support both (Scovill
*v.* Glasner, 79 Mo. 449); (3) whether the same measure of damages
is applicable to both (Hurst *v.* Railway, 84 Mich. 539); (4)
whether both could have been pleaded cumulatively in the same
count (Richardson *v.* Fenner, 10 La. Ann. 600); (5) whether an
adjudication upon one would bar a suit under the other (Davis
*v.* Railroad Co., 110 N. Y. 646). Of these the last mentioned

is probably the best and most useful, though even it comes back at last to the question whether the cause of action is the same.

Amendments are allowed to cure defects. The original petition need not be perfect in either form or substance, but it should have in it at least enough to indicate some particular cause of action. "Some transaction must be indicated, and some particular duty and breach in respect to that transaction must apparently be asserted by the declaration, and must be shown to exist by the amendment. If the plaintiff has two causes of action of the same class, though the same facts may, in part, be common to both of them, he is not allowed to declare upon one and afterwards abandon it and substitute the other by amendment." *Ellison's* case, supra, 709. He may, however, add further facts to more fully describe the cause of action, — the wrong, — which he originally alleged. He may allege additional facts to show the existence of his primary right, as long as he does not undertake to set up another and distinct right. And he may allege additional facts to show that the defendant has been guilty of the alleged violation of plaintiff's right. If there is substantial identity of wrong (which necessarily includes identity of the right violated), there is substantial identity of cause of action. This identity is not the same as that required between allegata and probata. A party is required to prove his material and essential allegations as he has alleged them, and, in the absence of amendment, may fail because of a variance, though the facts proved show substantially the same cause of action shown by the facts alleged. The two sets of facts may show substantially the same cause of action, and yet the proof of one will not sustain the allegation of the other. Not so with the test of an amendment. To avoid a variance is not the least important of the offices of an amendment. *Davis v. Hill*, 41 N. H. 329. So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action. Persuaded of the correctness of the above views we feel constrained to overrule so much of the decisions of the following cases as is in conflict therewith: *Central R. Co.* v. *Wood*, 51 *Ga.* 515; *Skidaway S. R. Co.* v. *O'Brien*, 73 *Ga.* 655; *Henderson* v. *Central Railroad*, 73 *Ga.*

718; *Cox* v. *Murphey*, 82 *Ga.* 623; *Roughton* v. *Georgia R. Co.*, 109 *Ga.* 604; and also so much of any other case as conflicts with the ruling now made. This puts this court back in line with its earlier decisions. Our present ruling is quite in harmony with that in *Maxwell* v. *Harrison*, 8 *Ga.* 61, in which Lumpkin, J., said: " The true criterion for determining whether an amendment is admissible we take to be this — whether the amendment proposed is another cause of controversy, or whether it is the same contract or injury and a mere permission to lay it in a manner which the plaintiff considers will best correspond with the nature of his complaint, and with his proof, and the merits of his case. For, while the plaintiff can not introduce an entirely new cause of action, he may nevertheless add a new count, substantially different from the declaration, provided he adheres to the original cause of action." In another case, much like the present one, — *Augusta & S. R. Co.* v. *Dorsey*, 68 *Ga.* 228, — it was held that " A suit against a railroad company for damages resulting from the careless and negligent running of its engine may be amended by setting out negligence in not discovering and remedying defects in the machinery of the engine, which by the use of ordinary care and diligence could have been discovered and remedied so as to prevent the accident. Such amendment does not add a new cause of action." The case of *Harris* v. *Central Railroad*, 78 *Ga.* 525, applies the most liberal rules to the allowance of amendments in cases of this character. The cases overruled are, we think, not only wrong in principle, but are not binding law, because they are in conflict with earlier cases which were not reviewed or overruled. Our present ruling is not so much a return to a rule which had been abrogated, as it is a recognition of a rule which, though at times forgotten, has ever been legally binding upon us. Among the cases, earlier and later than those overruled, consonant with the ruling in the present case, might also be cited: *Christian* v. *Penn*, 5 *Ga.* 482; *Pearson* v. *Reid*, 10 *Ga.* 582; *Central R. Co.* v. *Kitchens*, 83 *Ga.* 83; *Georgia R. Co.* v. *Murden*, 83 *Ga.* 753; *Rome R. Co.* v. *Barnett*, 89 *Ga.* 718; *Colley* v. *Gate City Coffin Co.*, 92 *Ga.* 664; *Florida C. & P. R. Co.* v. *Hays*, 99 *Ga.* 290; *Glover* v. *Ry. Co.*, 107 *Ga.* 34; *Raleigh & Gaston R. Co.* v. *Bradshaw*, 113 *Ga.* 862; *McCandless* v. *Inland Acid Co.*, 115 *Ga.* 968.

6. In the present case there was no error in allowing the amendment. Had the substance of the amendment appeared in the original petition, in addition to the allegations therein made, we think there would be no contention that the suit would have been upon two different and distinct causes of action. What difference can it make that a portion of it was added by amendment? A single cause of action is not multiplied and made more than one merely because the facts showing it are alleged only partially in the original petition, and the allegations completed in the amendment. Or, suppose there had been judgment upon the original petition, without amendment, and then suppose the plaintiff had brought another suit based upon the allegations made in the amendment? Would not such second suit clearly be barred by the first? And yet, if each different act of negligence gave rise to a different cause of action, then the plaintiff could base a separate suit upon each different act of negligence. That this is not true is shown by cases like that of *Greene* v. *Central Ry. Co.*, 112 *Ga.* 859, in which it was ruled that an adjudication upon a petition brought to recover damages for the negligent destruction of property "will bar a second suit by the same plaintiff against the same defendant for the same alleged cause of action, though the grounds of negligence upon which the second petition is based may be different from those embraced in the first." This is a clear recognition that the allegation of different grounds of negligence does not necessarily show more than one cause of action. In the present case we think that substantially the same cause of action shown by the petition was shown by the amendment. Whatever may have been the duty of the defendant with reference to grading its streets, providing drains for surface-water, filling washouts, or inspecting sheds over sidewalks, no failure to perform these duties would have given plaintiff any right of action unless such failure was a violation of some duty the defendant owed the plaintiff. Her right of action arose upon the violation of her right by the defendant,—upon the commission of the wrong. Relatively to the plaintiff, it was the duty of the defendant to use ordinary diligence to guard the plaintiff from injury from unsafe sidewalks, or sheds over them, while she was properly using the sidewalks. The original petition alleged this duty and a breach thereof. The wrong pleaded was the defend-

ant's negligent failure to protect the plaintiff from injury from an unsafe sidewalk. While, in a legal sense, this wrong was single, it was the composite result of several facts. The mere failure to provide proper drains for the surface-water, the improper grading of the street, the use of improper material to fill a hole in the sidewalk, and the failure to inspect and repair or remove the shed, may have been breaches of defendant's abstract public duties, but no more gave the plaintiff individually a right of action than did her mere primary right to use the sidewalk with reasonable safety from the dangers against which it was the defendant's duty to guard. It was necessary that there should be a violation by defendant of the plaintiff's right,— a breach by the defendant of the duty it owed the plaintiff,— immediately upon which the remedial law gave her a right of action. In order to show this wrong it was necessary to allege more than the falling of the shed and the damage to the plaintiff. It was also necessary to show a want of due diligence on the part of the defendant. This was done in the original petition by alleging the improper grading and draining of the street and filling of the washout,— facts alleged to show the wrong by showing that defendant had negligently permitted the sidewalk to become unsafe, as a consequence of which the shed had fallen and injured the plaintiff. These facts were not themselves the wrong of the defendant which gave the plaintiff a right of action, but that wrong was the conclusion necessarily drawn from those facts. The allegations in the amendment, that the shed was old, dangerous, and liable to fall, and that the defendant should have discovered this by proper inspection, and removed the shed, went to show the same cause of action. These additional facts did not show a new wrong, but merely constituted a new reason for the allegation of the same wrong,— a new logical premise from which would follow the conclusion that the defendant had failed in its duty to the plaintiff. Elyton Land Co. *v.* Minger, 89 Ala. 521. This was the conclusion originally alleged, and the amendment pleaded no new wrong and added no new cause of action. This conclusion as to the wrong of the defendant was thus shown by several allegations of facts. No one of them was an essential part of the cause of action. As against a general demurrer, all of them could have been replaced by a general allegation of negli-

gence.　All of them could have been alleged originally in the same count. At least one of them should have appeared in order to meet the requirement of code pleading that the petition should set out the *facts* which show the cause of action.　All of them lead to the same conclusion,— a certain definite breach by the defendant of a particular duty which it owed the plaintiff.　The petition and the amendment charged but one wrong, and, therefore, but one cause of action, and the trial judge did not err in overruling the objection of the defendant that the amendment added a new and distinct cause of action.　See Kuhns *v.* Ry. Co., 76 Ia. 67 ; McIntire *v.* Railroad, 58 N. H. 137.

7. Complaint was made of the admission of evidence that, after the shed had fallen, another hole caved in the sidewalk, the conditions not having changed since the time of the injury to the plaintiff.　This was objected to as irrelevant.　It was a disputed issue whether the red sand put in the sidewalk was a proper material, or was unsuited therefor and liable to be washed out by the improperly ponded surface-water upon it.　To this issue we think that this evidence was relevant.

8. After an expert witness had been examined as to the use of posts supporting a shed, and the effect of removing one or more of them, the court asked him : " What is the object of putting posts under a shed, anyhow ? " The witness answered : " It is to hold up the outer edge." The court then asked : "Suppose you did not put them in there, what would be the result ? " To which the witness answered : " Wouldn't have any shed." The witness had been introduced by the defendant and had been examined by both parties.　The occurrence above narrated is made one of the grounds of the motion for a new trial, the movant complaining that the questions of the court were put in such language and in such connection as to ridicule the witness's testimony and minimize its effect, and that they were calculated to prejudice the jury to an unfavorable consideration of such testimony.　Under the reasoning in *Potter* v. *State,* 117 *Ga.* 693, we think there was error in this action of the court.　The questions were so put that the jury might well have concluded therefrom that the court regarded as improbable and erroneous the opinions to which the witness had just testified.　Whether the error was such as alone to require a new trial we need not determine, as the judgment is reversed upon other grounds as well.

9. The court was requested in writing, at the proper time, to charge as follows : "If you believe, gentlemen of the jury, from the evidence in this case, that this shed or awning was apparently secure and safely constructed with timbers of the proper form and size, and that the falling of the shed was caused by some latent defect not discoverable by the use of ordinary care and diligence, then you should return a verdict in favor of the defendant." Another request, similarly made, was as follows : "I charge you, gentlemen of the jury, that if you should believe from the evidence that the shed fell from a latent defect, that is a defect that could not have been discovered by ordinary care and diligence, then I charge you, gentlemen, that neither party would be at fault; and if you so believe, the plaintiff would not be entitled to recover, and you should find for the defendant." These requests were refused, and error assigned upon such refusal. An examination of the charge of the court shows that the requests were not covered by anything therein contained. The charges requested were, we think, sound in law and applicable to the case. One of the disputed issues was the cause of the shed's falling. Another was whether, if the shed fell because of a defect in the fastening of the shed to the house, such defect was one which should have been discovered by proper and reasonable inspection, or one which could not have been discovered by the exercise of ordinary and reasonable diligence upon the part of the defendant. To these issues the charges requested were applicable, they were correct statements of the law in regard thereto, and the court erred in refusing to include them in the instructions given the jury.

10. The court also refused to give the following charge, properly requested by the defendant: "If, after considering all of the evidence, you should conclude that the injury was a pure accident caused neither by the negligence of the city nor that of the plaintiff, then there could be no recovery. This must be so because it is only negligence in itself through its officers and agents that makes the city liable; and if neither party be negligent, of course the city is not." This request is closely associated with those just dealt with. If there was no fault on the part of the plaintiff, and the defect causing the fall of the shed was one which was not brought about by the city, and which they could

not have discovered by the exercise of due diligence, then, relatively to the parties to this case, the fall must have been accidental, and the defendant could not be held liable. This request was not covered by the charge given, and we think its refusal was error.

11. Many of the charges which the defendant requested, while sound as to one theory on which plaintiff sought to recover, were faulty in that they excluded altogether some other theory. This was true of a number of requests to charge as to knowledge and notice, which entirely excluded the question as to whether the defendant had complied with its duty of inspection, and whether a proper inspection would have revealed the defects which caused the fall of the shed and the injury to the plaintiff. Such requests were properly refused.

12. Others of the requests to charge contained what amounted to a statement that the same duty was upon plaintiff and defendant. This was clearly not so. Upon the defendant the law imposed the duty of reasonable inspection to guard against danger (*Mayor of Jackson* v. *Boone*, 93 *Ga.* 666), while the plaintiff was under no such duty. Indeed, except as to defects of which she had notice, the plaintiff had a right to presume that the sidewalk was reasonably safe.

13. Another request contained an instruction that it was the duty of plaintiff "and her family" to take care of the shed and keep it in repair. Plaintiff's husband rented and occupied the building to which the shed was attached, and plaintiff resided there with him, but this did not impose upon her, relatively to the defendant, any duty to keep the shed in repair. The plaintiff's husband was himself merely a tenant, and there was no evidence that the duty of repairing was upon him rather than upon the landlord, and there was certainly nothing to show that such duty rested upon the plaintiff.

14. There was no error in refusing to charge that any contributory negligence on the part of the plaintiff would defeat a recovery, and that, in order to recover, she must show herself to have been free from fault. Whatever may be the rule in other jurisdictions, it has long been settled in this State that, in a case like the present, contributory negligence does not necessarily debar a recovery. "If the plaintiff by ordinary care could have avoided

the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Civil Code, § 3830.

15. The charge requested as to the "last clear chance" was not as well adapted to the issues and evidence in this case as was the charge given by the court, that "if the plaintiff could have avoided the accident by the use of ordinary care and prudence upon her part, then she can not recover, although the city may have been negligent." There was therefore no error in refusing to give the request in charge. Of the requests not heretofore dealt with, such as were sound were either inapplicable to the case or were covered by the charge given.

16. In stating the issues in the case, the judge told the jury that the defendant had pleaded that the shed had fallen "by reason of the fact that it was an old, dilapidated, rotten structure." This did not differ very widely from the defendant's plea that the shed "fell because of the weakness and decay incident to great age," and that "the plaintiff knew of the great age and impaired condition of said shed." It was, however, inaccurate, and tended to weaken the defendant's contention that the defect in the shed was a latent one. The language used by the judge implied that the defendant contended that the fall of the shed was due to defects which were apparent and easily discoverable. When taken in connection with their immediate context and in the light of the entire charge, the other instructions of which complaint is made were not erroneous for any of the reasons assigned in the motion for new trial.

Because of the errors above pointed out, we think that a new trial should have been granted.

*Judgment reversed. All the Justices concur.*