## STRACHAN SHIPPING CO. *v.* HAZLIP-HOOD COTTON CO.

1. In answer to the first question we hold that the amendment did not set up a new cause of action.
2. We answer the second question in the negative.
3. The third question is answered in the affirmative.

No. 4776. JANUARY 13, 1926.

The Court of Appeals (in Case No. 15461) certified the following questions:

1. Where a consignor of goods files a petition against a carrier, seeking to recover in tort for their loss, alleging as the measure of damages their market value at the time and place when and where they should have been delivered, and alleging as the ground of negligence that the carrier, not regarding its duty safely and securely to carry and convey said property, has not safely and securely

---

Actions 1 C. J. pp. 937, n. 83; 938, n. 98; 939, n. 22.
Pleading 31 Cyc. pp. 415, n. 32; 417, n. 55, 57; 418, n. 60; 680, n. 69.
Shipping 36 Cyc. p. 275, n. 98.
Trial 38 Cyc. p. 1708, n. 99.

carried and conveyed the same, but by and through the careless-
ness and negligence of its agents and servants the said property
was lost, is a new and independent cause of action set up by an
amendment, which, without otherwise modifying original aver-
ments such as above stated with reference to the breach of duty and
the measure of damages claimed, only strikes the allegation that
the property "was lost," and substitutes therefor an averment that
the carrier, without authority from the consignor, shipped the
property to a place other than the proper destination, sold the same,
delivered the proceeds to another, and thereby converted said prop-
erty to its own use?

2.　In an action in tort, brought by a shipper against an ocean
carrier, for damages on account of a breach of duty in failing to
transport properly certain bales of cotton from Brunswick, Georgia,
to Liverpool, England, assuming that the proper measure of dam-
ages would be the market value of the property at Liverpool, the
place of destination, where in the trial of such a case there is no
direct or other evidence as to the market value at Liverpool except
that there is evidence as to the market value of the property at
the time in question at Brunswick, and evidence as to the amount
of freight transportation charges from Brunswick to Liverpool,
will such evidence alone afford a basis from which a jury in such
a case would be legally authorized to find the market value of the
property at Liverpool?

3.　Where a party in the trial of a case submits at the proper
time, to the presiding judge, a single writing entitled with the
name of the case, which in terms "requests the court to charge as
follows," and following this in consecutive order sets forth in
ordinary separate paragraphs, numbered consecutively "1," "2,"
"3," etc., respectively, but otherwise unseparated in spacing or by
repeating in each paragraph a request to charge the matter therein,
certain contentions, rules of law, and applications of such rules to
the facts as contended by such party, some of which paragraphs
cover contentions and rules distinct and unrelated to those con-
tained in other paragraphs, and where certain of such numbered
paragraphs contain within themselves correct and complete state-
ments of the contentions and rules therein dealt with, are pertinent
and applicable to the facts of the case, and are not otherwise cov-.
ered in the charge of the court, and where a verdict for the opposite

party is not demanded, would it be incumbent upon a trial judge in such a case to give in charge the correct and appropriate numbered paragraphs, where the other numbered paragraphs contain erroneous statements of law, or are not pertinent and applicable to the facts, or are covered by other portions of the charge; or may the judge in such a case properly refuse to charge any of the numbered paragraphs, for the reason that such a writing would be a request to charge submitted en bloc, and that the judge would not be required to separate correct and appropriate paragraphs from incorrect and inappropriate paragraphs?

If the answer to the question in the immediately preceding paragraph be in effect that the judge in such a case would not be required to separate and charge correct and appropriate paragraphs contained in such a writing, would the rule be different if the excepting party does not by one assignment of error take exception to the refusal of the court to charge all of such propositions, but sets forth as separate and distinct grounds in a motion for new trial the refusal to charge each of such separately quoted paragraphs, and in each separate ground assigns error on the refusal to charge the particular quoted paragraph, also assigning error on the overruling of such motion for new trial?

*Adams & Adams,* for plaintiff in error.

*Hitch, Denmark & Lovett* and *Stella Akin,* contra.

GILBERT, J. In order to answer the first question it is necessary to bear in mind the meaning of the term "cause of action." The Civil Code (1910), § 3652, declares: "For every violation of a contract express or implied, and for every injury done by another to person or property, the law gives a right to recover, and a remedy to enforce it." In *Ellison* v. *Georgia Railroad Co.,* 87 *Ga.* 691, 699 (13 S. E. 811), it was said: "Relatively to the law of pleading, a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage." This was approved in *City of Columbus* v. *Anglin,* 120 *Ga.* 785, at p. 790 (48 S. E. 318). In the latter case, quoting from *Stafford* v. *Maddox,* 87 *Ga.* 540, it was said: "To give a right of action 'nothing is needed but a right in the plaintiff and some invasion of that right by the defendant.'" Our Civil Code (1910), § 5683, provides: "No amendment adding a new and distinct cause of action, or new and

distinct parties, shall be allowed unless expressly provided by law." This question has been elaborately and learnedly discussed by both Chief Justice Bleckley in the *Ellison* case, and by Chief Justice Simmons in the *Anglin* case. From those cases, to which we refer for a broad discussion of the subject, we find that some of the tests properly used in determining whether an amendment sets up a new and distinct cause of action are as follows: One is, "whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or *differently* [emphasis ours] laid to meet the possible scope and varying phases of the testimony." Another is "whether the same evidence would support both," and still another is "whether an adjudication upon one would bar a suit under the other." These are not all the tests therein stated, and it is there admitted that some of them are fallible. Chief Justice Simmons, however, in the *Anglin* case, speaking for the court in regard to these tests, said: "Of these the last mentioned is probably the best and most useful, though even it comes back at last to the question whether the cause of action is the same." In the case to which the question certified by the Court of Appeals pertains, the legal duty or obligation was under the contract set out. The original petition in the case with which we are now dealing alleged a contract with the plaintiff by which the defendant agreed and undertook to safely transport a number of bales of cotton from Brunswick, Ga., to Liverpool, England, and the petition also alleged the breach of that contract. The contract imposed a legal duty, and the breach of the contract constituted a wrong, and this was the gist and basis of the cause of action. The petition as originally filed, however, undertook to show the manner in which the breach occurred, or the particular way by which the Shipping Company committed the wrong. The manner in which the wrong was so alleged was that the carrier, "not regarding its duty safely and securely to carry and convey said property, has not safely and securely carried and conveyed the same, but by and through the carelessness and negligence of its agents and servants the said property was *lost* [emphasis ours]." In what manner the cotton was "lost" the petition did not show. The failure to so explain would not be fatal to the petition, because the gist of the action was the breach of the contract to safely transport, and the loss and injury thereby caused to the plaintiff.

The amendment strikes only the word "lost" from the petition and substitutes therefor an averment that, "since the filing of this suit, petitioner has discovered that the defendant wrongfully, negligently, and in violation of the duty and obligation owing by it to petitioner, on a day and date unknown to petitioner, but subsequent to June 1, 1920, shipped said six bales of cotton to Savannah, Georgia, and there sold the same and delivered the proceeds of the sale to the United States Railroad Administration, Director-General of Railroads, without any authority from petitioner so to do, and thereby converted said cotton to its [defendant's] own use." Does the amendment undertake to set up another and a distinct right? If so, it is not allowable. We do not think it does. We are of the opinion that, after the proposed amendment, the petition still sets out a case depending for a recovery simply upon the breach of a contract to safely transport the cotton to its designated point of destination, due to negligence. This is the wrong of which the petitioner complains and for which it seeks compensation in damages. If "there is substantial identity of wrong (which necessarily includes identity of the right violated), there is substantial identity of cause of action. This identity is not the same as that required between allegata and probata. A party is required to prove his material and essential allegations as he has alleged them, and, in the absence of amendment, may fail because of a variance, though the facts proved show substantially the same cause of action shown by the facts alleged. The two sets of facts may show substantially the same cause of action, and yet the proof of one will not sustain the allegation of the other. Not so with the test of an amendment. To avoid a variance is not the least important of the offices of an amendment." *City of Columbus* v. *Anglin,* supra. The case made by the proposed amendment still depends on the contract of the defendant to safely transport the cotton to Liverpool and the breach of that contract, which was the negligent failure to so transport. Whether the cotton was lost in the ordinary way that the word "lost" would imply, that is by reason of its being misplaced or accidentally left where its whereabouts were unknown, or whether the transportation company negligently and wrongfully transported it to a place other than the proper destination and afterwards sold it, delivering the proceeds to another, is of no consequence except as it may

affect the principle that the probata must correspond with the allegata. The allegation as to the legal duty was not changed. The breach was unchanged. Only the manner in which the breach was committed was changed by the amendment. The proposed amendment did not state a different matter. The subject of controversy was the same before as after amendment. It was the same duty and the same breach *differently* laid to meet the possible scope and varying phases of the testimony. Moreover, an adjudication upon the case as originally laid would certainly have been a bar to a suit laid under the allegations of the proposed amendment. In the *Anglin* case it was clearly stated that the question whether the amendment set up a new and distinct cause of action was often a "difficult question." It was further said in that case: "Finding an irreconcilable conflict in the decisions, we ordered the present case reargued upon this question, and gave permission for the review of all the Georgia cases upon the subject, in order that the errors in some of the decisions might be corrected and the inconsistencies removed." Thus it will be seen that at that time this court recognized the conflict in the decisions on that question; and therefore it must be admitted that in this case there are previous overruled decisions of this court which are in conflict with the view which we now take. We deem it our duty to follow the *Anglin* case, supra. We will not quote or cite further authority for the position we have taken above. The decisions already cited contain within themselves ample citation and analysis of other cases, and it is useless to repeat what has been done more clearly and more ably than the writer is able to do. In the main the cases cited by plaintiff in error are to the effect that the amendment to the petition makes the case one of trover, because of the allegation that the cotton was converted by the Shipping Company to its own use. In our view the amendment does not have that effect. It is still an action in tort arising out of contract, and based upon negligence. The gist of the action is negligence, not the wrongful conversion nor one of title, as in *Berry* v. *Jackson, 115 Ga.* 196 (41 S. E. 698, 90 Am. St. R. 102). The amendment itself based the right of recovery on the negligence of the defendant; it alleged that "the defendant wrongfully, negligently, and in violation of the duty and obligation owing by it to the petitioner," etc., shipped the cotton to the wrong destination, sold

the same, and delivered the proceeds to a named third party. The prayer is for a stated sum alleged to be the "market price of the cotton at the time and place of delivery." It did not seek to recover the highest proved value of the property between the date of conversion and date of trial. This is shown by the record. The amendment merely supplied an explanation as to the manner in which the contract for transportation was breached, and served to meet the anticipated evidence as to what actually became of the cotton, and was germane to the original petition. The plaintiff could waive the right to sue in trover and elect to sue for the tort arising ex contractu. For these reasons we answer that the amendment did not set up a new and distinct cause of action. We will now deal with the cases cited by counsel for the Shipping Company to support their contention that the amendment set up a new cause of action.

*Palmer* v. *Southern Express Co., 52 Ga.* 240: Palmer brought suit against the Express Company for damages from the failure to transport as a common carrier certain goods entrusted to it. Later the plaintiff amended by adding "counts in trover and trespass." The court charged the jury that if the counts in trover and trespass were filed four years or more after the accrual of the cause of action, they were barred by the statute of limitations. The amendment setting up trover and trespass was filed more than four years after the accrual of the cause of action. Judge McCay, delivering the opinion, said: "Trover will not lie against a carrier for negligence. If he be a carrier and liable as such, he has the goods lawfully, and trover will not lie unless he asserts dominion over them as his own, as by a sale of them and user inconsistent with the true owner's title, or a delivery of them to some one other than the true owner. In this case there was no delivery of them to any improper person or any assigns, or sale of them, or assertion of title to them. There is nothing in the proof sustaining trover or trespass but the fact (if it be a fact) that the Southern Express Company got unlawfully in the possession of the goods. Under this view it was no carrier, who acts under a contract express or implied, but a tort-feasor, and the action is a different cause of action from the action on the case for negligence. As they both arise ex delicto, they may, under our law, be joined, but they are nevertheless distinct causes of action. It follows from this that

the new cause of action was not added—sued upon—until after the four years, it was barred." This case seems to be authority only for the ruling that suits in trover and suits for damages against carriers for failure to transport goods both arise ex delicto and may be joined, but they are nevertheless distinct causes of action. The *Palmer* case does not conflict with the rule adopted in this case, because the amendment does not change the suit from one based on negligence to one laid in trover. We think the amendment germane to the suit as first laid, and, being such, was properly allowed. *Jenkins* v. *Lane,* 154 *Ga.* 454 (10) (115 S. E. 126). As stated by Judge McCay, trover will not lie for negligence of a carrier. The present suit, before and after amendment, sought recovery for negligence. In the *Palmer* case the amendment setting up trover did not allege negligence. It alleged conversion only. The allegations in the present suit are very similar to those required in a trover suit, but do not contain all of the allegations necessary. The amendment, though alleging a conversion, does not strike the amendment as to negligence, and therefore the suit remains one of tort based on negligence, and "trover will not lie against a carrier for negligence." If, however, the *Palmer* case is in conflict on the subject of amendments with *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (supra), it has been overruled by the latter case, where all cases holding contrary to that case were expressly reviewed and overruled, whether specifically named or not.

In *Cobb* v. *Clark,* 118 *Ga.* 483 (45 S. E. 305), it was ruled that there was no error in refusing to allow an amendment to a petition, because it added a new and distinct cause of action. The original petition sought to recover for the breach of an implied duty growing out of a contract. The amendment "sought to recover for a trespass by the defendant as a stranger, independently of any contract or contract relation." The amendment was not germane to the petition.

In *Merchants & Miners Transportation Co.* v. *Moore,* 124 *Ga.* 482 (52 S. E. 802), the facts were substantially like the facts of this case. The owner of the property brought suit in trover against the carrier, and elected to take a money verdict for damages, measured by the highest proved value of the property converted. Undoubtedly that case is controlling authority for the contention that trover will lie in such a case. We have said above

that the facts in this case would have authorized a suit in trover, provided all of the necessary allegations were included in the petition.

In *Southern Express Co.* v. *Sinclair,* 130 *Ga.* 373 (60 S. E. 849), Sinclair brought an action for damages against the Express Company, a· common carrier, on account of the failure of the defendant to transport a trunk. This suit was dismissed, and Sinclair brought an action of trover to recover the trunk or its value. In the second action he did not allege that the defendant was a common carrier, or plead any breach of duty imposed on it as such, or any breach of contract. He merely made the allegations appropriate to a suit in trover. The uncontradicted evidence showed that the trunk was transported to the place of destination, but was not delivered on the day of arrival, and was put into a place of deposit of the carrier, where it was consumed by fire occurring during the succeeding night, and there was no conversion or possession when the demand was made and refusal to deliver. It was held that a verdict for the plaintiff was without evidence to support it, whether or not the failure to deliver on the day of arrival was negligent. There was no conversion by the company. It did not deny the title of the true owner, or refuse to deliver the property in its possession on demand, or deliver it to the wrong person. Concluding the opinion the court said: "It is unnecessary to deal with the contentions touching the liability of the defendant for negligence of its connecting carrier, if any, or as to the effect of the valuation stated in the express receipt. Whatever may have been the liability of the defendant in an action against it as a common carrier, based on its contract or its duty at common law under the allegations and the form of action employed, the evidence did not sustain the verdict." It thus appears that the ruling, and the only ruling, pertinent to the present case is that the suit there dealt with was purely an action in trover, and under the evidence, there being no conversion, the verdict could not stand. The court expressly refused to deal with the question of liability of the defendant on its contract, or its duty at common law.

The litigation between Sinclair and Southern Express Company finally reached the third action, reported in *Southern Express Co.* v. *Sinclair,* 135 *Ga.* 156 (68 S. E. 1113). The first action was for damages due to the negligent failure to transport the property;

the second was in trover, but "was different in character both from the first and the third," and was not a recommencement of the first, nor was the third a renewal of the second. The second suit was not dismissed, but was prosecuted to a final determination on its merits and brought to this court, and the judgment in favor of the plaintiff was reversed. It was held that the pendency of the former action would not suffice to remove the bar of the statute, under the Civil Code [1895], § 3786, which provides for a suspension of the statute where suits are recommenced within six months from a nonsuit, or dismissal, etc. The effect of that ruling is that the latter suit was not a renewal of the former, and therefore was a distinct cause of action.

2. It is assumed in the question that the measure of damages in such a case "would be the market value of the property at Liverpool, the place of destination." In such an action "the burden of proof is on the plaintiff to show the value of the goods lost." The burden is not carried where the plaintiff merely proves the market value of the lost goods at the point where the shipment begins, together with the transportation charges to the point of destination. It can not be held, as a matter of law, that the market value at the point of destination would be the same as the market value at the point of beginning with the freight added. Compare *Simpson* v. *C., N. O. & T. P. R. Co.,* 81 *Ga.* 495 (8 S. E. 524).

3. The majority of the court are of the opinion that the third question should be answered in the affirmative, that is, it would "be incumbent upon a trial judge in such a case to give in charge the correct and appropriate numbered paragraphs, where the other numbered paragraphs contain erroneous statements of law or are not pertinent and applicable to the facts or are covered by other portions of the charge."        *All the Justices concur, except*

BECK, P. J., and GILBERT, J., dissenting from the ruling made in answer to the third question. In *Grace* v. *McKinney,* 112 *Ga.* 425 (37 S. E. 737), first headnote, it was held: "Where a request to charge contains several propositions one or more of which are incorrect, the judge may refuse the entire request." This case is not reported in the published volume in full. The record of file in the clerk's office shows, however, that one ground of the motion for a new trial was as follows: "Because the court erred in refus-

ing to give the following written request which was handed to the court before the charge begun, to wit:" Then follows a number of paragraphs lettered A, B, C, D, E, and F. In *Thompson* v. *O'Connor,* 115 *Ga.* 120 (41 S. E. 242), fifth headnote, it was held: "It is not error for the court to refuse to give in charge to the jury any portion of a written request which contains several propositions one or more of which are incorrect." In the opinion the court said: "By one written request, counsel for the plaintiffs in error sought to have the court give in charge to the jury five different propositions of law. Some of these propositions were possibly meritorious; others of them certainly were not. By one assignment of error, exception is taken to the refusal of the court to charge all five propositions. Under the ruling of this court in the case of *Grace* v. *McKinney,* supra, the judge was authorized to refuse to comply with the request as made, and the judgment will not on that account be disturbed." Neither of these decisions was concurred in by all six Justices, one Justice being absent in the former case and two in the latter. In the *Thompson* case one ground of the motion for new trial was as follows: "Because the court refused to give the following written request to charge, presented to the court before the argument in said case began:" Then followed separate paragraphs lettered (a), (b), (c), (d), and (e). The question in this case states that the writing submitted to the Judge requested "the court to charge as follows," and following this in consecutive order sets forth in ordinary separate paragraphs, numbered consecutively 1, 2, 3, etc., respectively, but otherwise unseparated in spacing or by repeating in each paragraph a request to charge the matter therein. We see no material difference between the request in this case and the requests in the two above-cited cases. It is true that the exceptions in this case assign error separately on the different paragraphs, whereas in the former case one exception assigned error on the refusal of the entire request. This difference will be dealt with hereafter. The Century Dictionary defines the phrase "en bloc" to mean "In the lump; in one lot." The Webster definition is "In a lump; as a whole." We think the request in this case was en bloc, that is, the request was made as a whole, and accordingly we would answer that the judge could properly refuse to charge any of the paragraphs, the question stating that some of

the paragraphs "contained erroneous statements of law, or are not pertinent and applicable to the facts." · Such a writing would be a request submitted en bloc. The judge would not be required to separate correct and appropriate paragraphs from incorrect and inappropriate paragraphs. We do not think the rule stated would require, as suggested by counsel, the extreme formality of placing each request upon a separate piece of paper. The only necessity is that the requests be so framed as to clearly indicate that they are separate and disconnected.

A request for instructions to the jury such as discussed above is, at the time when submitted to the judge, either "en bloc" or not. The character in this respect is to be determined by the paper itself as submitted to the court. Obviously the character of the request can not be changed or altered in any way by anything that is done thereafter. It follows that the method adopted by counsel assigning error thereon can in no way affect the question of whether the request is one made en bloc or not en bloc. If, at the time when submitted, a reasonable and proper construction determines that the request is en bloc, and the judge, so properly construing the request, refuses the same, manifestly it would be contrary to all reason to rule that by making separate assignments of error on each paragraph thereof its character would be changed from a request en bloc to one not en bloc. Moreover it would permit an unethical practitioner to lay an easy trap for the trial judge. If the request is made as a whole, error should be assigned thereon as a whole. If the different principles are intended to be stated as separate charges and in separate paragraphs, it follows that there is the corresponding advantage of being able to assign error separately. Under no circumstances is it possible for the method of assigning error to affect the character of the request submitted.