311 Ga. 811
FINAL COPY

S21A0143. HARVEY et al. v. MERCHAN.

PETERSON, Justice.

For a brief time period, OCGA § 9-3-33.1 allowed time-barred civil claims for childhood sexual abuse to be revived. During that time period, Joy Caroline Harvey Merchan sued her parents, Walter Jackson Harvey, Jr., and Carole Allyn Hill Harvey, under the revival provision of the statute for damages resulting from alleged childhood sexual abuse that occurred decades prior to the filing of the action, principally in Quebec, Canada. The Harveys filed a motion to dismiss and a motion for summary judgment, arguing that Merchan's claims were time-barred and could not be revived under OCGA § 9-3-33.1. Alternatively, the Harveys argued that the revival provision of the Act violated Georgia's constitutional ban on retroactive laws and the due process and equal protection clauses of the federal and state constitutions. The trial court largely denied the

Harveys' motions,[1] and we granted interlocutory review to decide whether Georgia or Quebec law applies to Merchan's claims, whether OCGA § 9-3-33.1 can revive a cause of action for acts that did not occur in Georgia, and whether Georgia's constitutional ban on retroactive laws and the due process and equal protection clauses of the federal and state constitutions would bar Merchan's pursuit of such a cause of action against her parents.

We conclude that Georgia substantive law applies to those torts committed in this state, while Quebec substantive law applies to the torts committed there. As for what statute of limitations applies, Georgia's limitations period applies to torts committed here, but for torts committed in Quebec, the trial court must determine in the first instance which limitations period is shorter, and the shorter period will control. Merchan can pursue a cause of action for acts that occurred in Quebec as well as Georgia, because OCGA § 9-3-33.1's definition of childhood sexual abuse is broad enough to cover

---

[1] The trial court did grant the Harveys' motion to dismiss Merchan's negligence claim, but that claim is not before us.

acts that occurred outside of Georgia. And such a result does not violate Georgia's constitutional ban on retroactive laws or the Harveys' due process or equal protection rights. Therefore, we affirm the trial court's judgment in part, vacate it in part, and remand the case for the trial court to compare the respective limitations periods.

1. *Factual and procedural history.*

In June 2017, Joy Caroline Harvey Merchan filed suit against her parents, Walter Jackson Harvey, Jr., and Carole Allyn Hill Harvey, for damages resulting from sexual abuse that allegedly occurred in Quebec and Georgia. Merchan, who is now in her mid-40s, alleges that her parents sexually abused her frequently and repeatedly from an early age until she turned 22 years old. In her deposition, Merchan stated that after the family moved from Quebec to Savannah when she was 15 years old, the physical abuse "died down" and "seemed to not be as prevalent," although her father would still watch her take a shower and make comments about her

body.[2] Merchan raised claims of negligence, sexual battery, assault, and intentional infliction of emotional distress, and asserted that her action was timely under OCGA § 9-3-33.1 (d) (1) (2015),[3] which, as discussed in more detail below, revived otherwise time-barred claims for childhood sexual abuse.

The Harveys filed a motion to dismiss, arguing that Merchan's claims were time-barred and could not be revived by OCGA § 9-3-

---

[2] The Harveys note that Merchan did not mention in her deposition a single instance of sexual abuse that occurred in Georgia, and argue that, after being deposed, Merchan amended her complaint (for the third time) to allege that she was sexually abused until she was 22 years old, whereas she had previously alleged that she was abused until she was 15 years old, her age when the family moved to Georgia. The Harveys argue that under the self-contradictory testimony rule announced in *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27 (343 SE2d 680) (1986), this Court should disregard Merchan's amended allegations because she provided no explanation for contradicting her earlier deposition testimony. But the *Prophecy* rule applies when a party offers contradictory testimony, and the allegations here are not testimony or its equivalent. See *CSX Transp., Inc. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) ("The *Prophecy* rule applies only to self-contradictions in a party's sworn testimony. It does not apply to unsworn statements[.]"). In any case, the record shows that, with one exception, Merchan consistently alleged in her unverified complaints that she was abused until she was 22 years old. She used this age in her initial complaint and first amended complaint, which were filed before she was deposed in September 2018. Although Merchan's second amended complaint, which was filed after she was deposed, alleged that she was abused until she was 15 years old, she later filed a third amended complaint changing the age back to 22.

[3] For ease of reference, all references to the statute are to the 2015 version; that is the only version at issue in this case.

4

33.1 (d) (1), because her common-law tort claims did not meet the definition of "childhood sexual abuse" as that term is used in OCGA § 9-3-33.1. Specifically, the Harveys argued that Merchan's common law tort claims were not among the criminal acts listed in the definition of childhood sexual abuse and that some of the acts were alleged to have occurred after Merchan turned 18 years old. The Harveys also challenged the constitutionality of OCGA § 9-3-33.1 (d) (1), arguing that it violated the due process and equal protection clauses of the federal and state constitutions, as well as the Georgia Constitution's prohibition against retroactive laws. In conjunction with their motion to dismiss, the Harveys moved for summary judgment, asserting that, because Merchan alleged that the abuse occurred in Canada, those actions could not be "violations" of Georgia law and, thus, would not meet the definition of "childhood sexual abuse."

In orders entered on the same day, the trial court denied the Harveys' motion to dismiss (except for the motion to dismiss the negligence claim) and denied their motion for summary judgment.

5

The trial court concluded that a civil action could be revived, even if the alleged conduct occurred out-of-state, as long as a defendant met the mens rea and actus rea elements required by one of the crimes listed in OCGA § 9-3-33.1. The court concluded that some of the torts alleged would constitute violations of the criminal statutes listed in OCGA § 9-3-33.1 and, therefore, could be revived under the statute, but concluded that the negligence claim should be dismissed because negligent acts are not intentional and thus could not be in violation of the criminal statutes listed in OCGA § 9-3-33.1 (a). The trial court also rejected the Harveys' constitutional claims. The court issued a certificate of immediate review for the orders on the motions to dismiss and for summary judgment, and we granted the Harveys' application for interlocutory review.[4]

2. *Does Georgia or Quebec law apply to Merchan's claims?*

---

[4] The trial court's orders on the motions to dismiss and for summary judgment were based entirely on an interpretation of OCGA § 9-3-33.1. The Harveys' main arguments on appeal relate to the proper interpretation of that statute, raising only one argument specifically addressing the denial of summary judgment. But that argument, which we address below in footnote 11, flows primarily from their reading of the statute.

Before addressing the Harveys' constitutional challenges to OCGA § 9-3-33.1, we must first decide whether that statute even governs Merchan's cause of action, as the acts underlying her complaint occurred mostly in Canada. The statute would govern at least some of Merchan's causes of action.

In this case, Merchan alleged that she was sexually abused by her parents in both Quebec and Georgia, creating a question about what law applies to her cause of action. Under the well-established rule of lex loci delicti, a tort action is generally governed by the substantive law of the place where the tort was committed. See *Auld v. Forbes*, 309 Ga. 893, 894 (2) (a) (848 SE2d 876) (2020); *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750 (1) (740 SE2d 622) (2013).[5] The place where a tort was committed is "the place where the injury sustained was suffered rather than the place where the act was committed," or, in other words, "it is the place where the last event

---

[5] There is a narrow exception to the lex loci delicti rule where enforcement of non-Georgia law would violate the public policy of this State. See *Auld*, 309 Ga. at 897 (2) (b). But no party has argued that this exception applies in this case.

7

necessary to make an actor liable for an alleged tort takes place." *Auld*, 309 Ga. at 894 (2) (a) (citation and punctuation omitted).

Although the rule of lex loci delicti governs the substantive law of the alleged tort, procedural and remedial questions are governed by the law of the state in which the action is brought. See *Auld*, 309 Ga. at 895 (2) (a); *Taylor v. Murray*, 231 Ga. 852, 853 (204 SE2d 747) (1974). Statutes of limitations are generally procedural in nature, and therefore those of the forum state govern. See id. at 853 ("In accordance with the fundamental principle of law that matters pertaining to the remedy are governed by the law of the state or country where suit is brought . . . it is well settled that the Statute of Limitations of the country, or state, where the action is brought and the remedy is sought to be enforced, controls, in the event of the conflict of laws." (citation and punctuation omitted)). The law of the forum state thus generally determines the time within which a cause of action may be pursued. See *Auld*, 309 Ga. at 895 (2) (a).

There is an exception to this general rule. "[W]hen the applicable foreign law creates a cause of action that is not recognized

8

in the common law and includes a specific limitation period, that limitation period is a substantive provision of the foreign law that governs, and it applies when it is shorter than the period provided for under Georgia law." *Auld*, 309 Ga. at 895 (2) (a).

(a) *Certain of Merchan's courses of action are governed by Georgia substantive law, while others are governed by Quebec substantive law, depending on where the torts were committed.*

Merchan argues that Georgia substantive law applies to all of her claims, even for alleged abuses that occurred in Quebec, because she suffered ongoing injuries from those abuses and, therefore, the torts were not complete until she was in Georgia. She argues that we should apply the "continuing tort" theory to her cause of action because she was subjected to continuous and repeated sexual abuse on a weekly, if not daily, basis from birth until she left the family home at the age of 22, and argues that she cannot be expected to remember each and every individual act of abuse that occurred during that time. Merchan acknowledges that no Georgia court has applied the "continuing tort" theory to claims of childhood sexual

9

abuse, or any physical assault for that matter, but argues that we should do so here because it would be consistent with our precedent and advance judicial economy. She also argues that because Georgia substantive law applies, Georgia's statute of limitations period also controls. We disagree, because every instance of alleged abuse constituted a discrete tort, and the continuing tort doctrine does not apply to situations in which each injury is known to the victim at the time the wrong was inflicted.

As discussed above, to determine where a tort is committed, we consider "the place where the last event necessary to make an actor liable for an alleged tort takes place." *Auld*, 309 Ga. at 894 (2) (a) (citation and punctuation omitted). An actor becomes liable when there is a breach of a duty that proximately causes damage to the plaintiff. See OCGA §§ 51-1-6 (an "injured party may recover for the breach of [a] legal duty if he suffers damage thereby"), 51-1-8 (". . . The violation of a private duty, accompanied by damage, shall give a right of action."); see also *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (273 SE2d 16) (1980) (recognizing that Georgia's rule

10

— that both the wrongful act and the damage must exist in order for there to be a cause of action — is the rule of most jurisdictions). A cause of action may accrue each time there is a breach of a legal duty that causes damage. See *City of Columbus v. Anglin*, 120 Ga. 785, 791 (48 SE 318) (1904) ("The same legal right may be more than once violated, and each violation may give rise to a new and distinct cause of action."); *Wells Fargo Bank, N.A. v. Cook*, 332 Ga. App. 834, 841 (1) (a) (775 SE2d 199) (2015) (in breach of fiduciary duty case, "each time a trustee makes an investment which the beneficiary alleges to have constituted mismanagement, the trust is detrimentally affected, and a cause of action accrues in favor of the beneficiary at that point and the limitation period begins to run on that specific claim"). For actions based on personal injury, a tort is complete when an injury results from the wrongful act or omission. See *Amu v. Barnes*, 283 Ga. 549, 551 (662 SE2d 113) (2008); see also *Everhart v. Rich's, Inc.*, 229 Ga. 798, 801 (2) (194 SE2d 425) (1972) ("On a tort claim for personal injury the statute of limitation generally begins

to run at the time damage caused by a tortious act occurs, at which time the tort is complete.").

Here, based on Merchan's allegations, the Harveys committed a tort each time they sexually abused Merchan, and those torts were complete at the time of each abuse. See, e.g., *Daniel v. American Optical Corp.*, 251 Ga. 166, 168 (1), (2) (304 SE2d 383) (1983) (action based on injury to the person accrued when plaintiff suffered physical injury); *Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 713 (1) (b) (850 SE2d 267) (2020) (cause of action accrued when plaintiff was allegedly molested by priest). Multiple causes of action would arise from multiple instances of abuse against Merchan. See *City of Columbus*, 120 Ga. at 791; *Wells Fargo Bank*, 332 Ga. App. at 841 (1) (a). But those multiple instances of abuse do not mean, as Merchan argues, that the continuing tort theory applies.

This Court first recognized the continuing tort theory in *Everhart* and has limited its application to personal injury cases. See *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (2) (368

12

SE2d 732) (1988). *Everhart* involved the failure to warn of the existence of a hazard capable of producing injury, and we said that the tort would be complete when the exposure produces an ascertainable injury. See 229 Ga. at 802 (2). But the key question in *Everhart* was how to determine the date of the injury for purposes of running the statute of limitations when the injury resulted from continued exposure to an unknown hazard, considering the difficulty in ascertaining the date of injury in such situations compared to torts involving an "injury . . . occasioned by violent external means," where there is little difficulty determining the date when the statute of limitations begins to run. Id. at 801 (2). We concluded that in situations where

> the continued exposure to the hazard is occasioned by
> the continued failure of the tortfeasor to warn the
> victim, . . . the statute of limitation[s] does not
> commence to run under these circumstances until such
> time as the continued tortious act producing injury is

> eliminated, e.g., by an appropriate warning in respect
> to the hazard.

Id. at 802 (2).

As our analysis in *Everhart* makes clear, the continuing tort theory applies only when the wrong and the injury are unknown to the plaintiff. See id. (holding that the continuing tort theory applies only to those "factual situations analogous to the situation" in *Everhart*). Indeed, as we have previously remarked, "in a continuing tort a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." *Waters v. Rosenbloom*, 268 Ga. 482, 483 (2) (490 SE2d 73) (1997). Here, the sexual abuse alleged by Merchan involves injuries "occasioned by violent external means," so there is no difficulty in determining when the tort was complete — both the wrong and the physical injury would have been apparent at the time. The factual allegations here are not analogous to the situation in *Everhart,* so the continuing tort theory does not apply. Therefore,

14

the substantive law of Quebec applies to those torts that were completed there, and the substantive law of Georgia applies to torts committed here.

(b) *The trial court must determine what statute of limitations period applies to Merchan's claims.*

Having established what substantive law applies, there remains a question about whether the statute of limitations period provided by OCGA § 9-3-33.1 (d) (1) applies to all of Merchan's claims. Because statutes of limitations are generally procedural in nature, the laws of Georgia, as the forum state, would generally control the time within which a cause of action may be pursued. See *Auld*, 309 Ga. at 895 (2) (a).

But the exception to this general rule is implicated in this case. In her brief here, Merchan notes that civil causes of action in Quebec predicated on sexual abuse are governed by a civil code and are not based on the common law. See *Miller v. White*, 702 A2d 392, 396 n.3 (Vt. 1997) (noting that Quebec follows civil law while the other Canadian provinces follow common law). She also notes that, at the

15

time she filed her lawsuit in this case, Quebec's civil code provided a 30-year prescriptive period — similar to our statute of limitations — for cases involving injuries arising from sexual aggression, and that the period began to run "from the date the victim becomes aware that the injury suffered is attributable to that act."[6]

If what Merchan notes is true, Quebec's prescriptive period might control some of her claims. If foreign law creates a cause of action not recognized in the common law and that law includes a specific limitation period, that period is a substantive provision of the foreign law and governs the claim if it is shorter than the period provided by Georgia law. See *Auld*, 309 Ga. at 895 (2) (a). Merchan's claims are based on civil law, not common law, and it appears from Merchan's statements in her brief that the Quebec civil law that would apply to Merchan's claims includes a specific limitation period. But it is not clear at this procedural stage whether Quebec's

---

[6] Merchan submits that the applicable civil code has since been amended to eliminate the prescriptive period, but acknowledges that if the Quebec civil code applies to her claims, the former 30-year version of the code would control instead of the current unlimited version.

16

prescriptive period is shorter than Georgia's and therefore controls some of Merchan's claims, because the parties did not litigate the issue below.

(i) *Although Merchan did not specifically plead her intention to rely on Quebec law, she is not precluded from relying on that foreign law.*

Merchan concedes that she did not specifically plead her intention to rely on the Quebec civil code, but argues that she may amend her pleadings as a matter of course because no pretrial order has been entered in the case. The Harveys counter that Merchan waived the ability to rely on foreign law because she failed to give timely notice of her intention to rely on said law.

Under OCGA § 9-11-43 (c), "[a] party who intends to raise an issue concerning the law of another state or of a foreign country shall give notice in his pleadings or other reasonable written notice. . . ." Under this statute, a party waives the ability to rely on foreign law when the party fails to provide reasonable notice of its intent to rely on foreign law. See, e.g., *Kessington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 198 (2) (715 SE2d 491) (2011); *Fortson v.*

17

*Fortson*, 204 Ga. App. 827, 828 (1) (421 SE2d 106) (1992); *Abruzzino v. Farmers' & Merchants' Bank*, 168 Ga. App. 639, 640 (1) (309 SE2d 911) (1983); see also *Sun Life Assur. Co. of Canada v. Imperial Premium Finance, LLC*, 904 F3d 1197, 1208 (11th Cir. 2018) (under Federal Rule of Civil Procedure 44.1, which contains language similar to OCGA § 9-11-43 (c), "a party waives its opportunity to rely on non-forum law where it fails to timely provide — typically in its complaint or the first motion or response when choice-of-law matters — the sources of non-forum law on which it seeks to rely"). Absent adequate notice under OCGA § 9-11-43 (c), we presume that the foreign law is the same as Georgia's. See *Abruzzino*, 168 Ga. App. at 640 (1) (citing *Glover v. Sink,* 230 Ga. 81 (195 SE2d 443) (1973)).[7]

Setting aside the question of whether Merchan gave reasonable notice that Quebec law might apply merely by alleging that sexual

---

[7] Even prior to the enactment of this statute as part of the Civil Practice Act, see Ga. L. 1968, p. 1104, § 10, we held that when a party intended to rely on the law of a foreign jurisdiction that was different than Georgia law, the party had to submit such law into evidence; otherwise, courts could assume that foreign law was the same as that of Georgia. See, e.g., *Carter v. Graves*, 206 Ga. 234, 236 (56 SE2d 917) (1949); *Craven v. Bates, Kingsbery & Co.*, 96 Ga. 78, 80 (23 SE 202) (1895).

abuse occurred there, as neither party addresses that issue, the Harveys have not established that Merchan cannot now amend her pleadings to provide such notice. A plaintiff enjoys considerable freedom in amending the complaint before the entry of a pre-trial order, at which point the plaintiff must seek leave of the trial court to amend the pleading. See OCGA § 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. . . ."); *Smith v. Lockridge*, 288 Ga. 180, 186 (4) (702 SE2d 858) (2010). There has been no pre-trial order entered in this case, so Merchan is still free to amend her pleadings to give notice of her intention to rely on the Quebec civil code.

The fact that the trial court considered the Harveys' motion for summary judgment does not, by itself, prohibit Merchan from amending. A plaintiff may not amend the complaint after losing at the summary judgment stage because the plaintiff has a duty to present her case in full in opposing the summary judgment motion or run the risk of an adjudication against her. See *Summer-Minter*

19

*& Assoc. v. Giordano*, 231 Ga. 601, 605-606 (203 SE2d 173) (1973)

(concluding that plaintiffs could not amend their complaint after the

Court reversed the trial court's denial of the defendant's motion for

summary judgment); see also *Smith*, 288 Ga. at 186 (4) ("[P]laintiffs

who have lost on appeal from a summary judgment ruling are not

allowed to return to the trial court and amend the complaint to try

a new theory of recovery." (citation and punctuation omitted));

*McDaniel v. City of Griffin*, 281 Ga. App. 350, 352 (1) (636 SE2d 62)

(2006) ("Because summary judgment is an adjudication on the

merits, once entered, a party is not free to amend its pleadings.").

But here, the trial court denied summary judgment to the Harveys,

so Merchan would not be prohibited from amending her complaint

unless we concluded that the Harveys were entitled to summary

judgment, which we decline to do, as we discuss in footnote 11. See

*Lafontaine v. Alexander*, 343 Ga. App. 672, 676 (1) (808 SE2d 50)

(2017) (where no pretrial order had been entered in the case, the

plaintiffs had the right to amend their complaint after partial grant

of summary judgment to the defendants only to the extent the amendment pertained to issues not already decided against them).

(ii) *It is for the trial court to determine whether Quebec's prescriptive period is shorter than Georgia's statute of limitations.*

That Quebec's civil code (and its attendant 30-year prescriptive period) is implicated in this case merely raises the additional question of whether that period is shorter than Georgia's statute of limitations. But this analysis must be done claim-by-claim, and is a fact-specific determination for the trial court to make in the first instance.

If abuse that occurred in Quebec would be barred by Quebec's prescriptive period, then those causes of action would have been extinguished upon the expiration of the prescription period, and former paragraph (d) (1) of OCGA § 9-3-33.1 cannot revive those causes of action. When a foreign statute creates a cause of action not known to the common law that provides a shorter limitation period,

> no action can be maintained in any jurisdiction, foreign or domestic, after the expiration of such period, since the limitation is, in such a case, a qualification or condition upon the cause of action itself, imposed by the power

21

creating the right, and not only is action barred, but the cause of action itself is extinguished, upon the expiration of the limitation period.

*Taylor v. Murray*, 231 Ga. 852, 853 (204 SE2d 747) (1974) (citation and punctuation omitted). If claims based on the events that occurred in Quebec would not be barred by Quebec's prescriptive period, then Georgia's general two-year limitation period for personal injury actions would apply, see OCGA § 9-3-33; and those claims potentially could be revived by former paragraph (d) (1), which provided:

> For a period of two years following July 1, 2015, plaintiffs of any age who were time barred from filing a civil action for injuries resulting from childhood sexual abuse due to the expiration of the statute of limitations in effect on June 30, 2015, shall be permitted to file such actions against the individual alleged to have committed such abuse before July 1, 2017, thereby reviving those civil actions which had lapsed or technically expired under the law in effect on June 30, 2015.

OCGA § 9-3-33.1 (d) (1) (2015).[8]

---

[8] Subsection (d) was repealed effective July 1, 2017. OCGA § 9-3-33.1 (d) (3) (2015). For actions that accrued after June 30, 2015, a separate subsection of OCGA § 9-3-33.1 applies. See OCGA § 9-3-33.1 (b) (2) (A) (governing actions for childhood sexual abuse committed on or after July 1, 2015). This provision

Because the parties did not litigate these issues below, and the procedural posture of this case has limited the development of the factual record, it is not presently known how Quebec's limitations period would apply to any alleged abuse that occurred there. The prescriptive period may have been suspended during the time Merchan was a minor, and it is not clear when Quebec law would consider Merchan as "becoming aware" of her injuries to trigger the start of the 30-year prescriptive period. These questions are for the trial court to resolve in the first instance.[9]

---

is inapplicable because, based on Merchan's allegations, the abuse occurred well before July 1, 2015.

[9] To decide the issue, the trial court may conduct an evidentiary hearing or rule on a motion for summary judgment supported by the factual record, in which case all inferences would be drawn in the non-movant's favor. But even if the Harveys were not to prevail on their statute of limitations defense at such a stage, nothing would preclude a jury from revisiting this issue. If, however, the Harveys prevailed, those causes of action would be dismissed. See *Jenkins v. State*, 278 Ga. 598, 604 (1) (B) (604 SE2d 789) (2004) (outlining that a pre-trial hearing is proper procedure in criminal cases, and concluding that "[i]f a defendant prevails on a pre[-]trial plea in bar on the statute of limitations, the charge should be dismissed; if the State prevails on this issue before trial, the defendant may still require the State to prove at trial that the charge is not barred by the statute of limitations." (footnotes omitted)); see also *Curlee v. Mock Enterprises, Inc.*, 173 Ga. App. 594, 596 (2) (327 SE2d 736) (1985) (whether a cause of action is barred by the statute of limitations is a mixed question of law and fact, and "[w]here the facts are in doubt or dispute, this question is one of fact to be determined by the trier of fact, but where the

3. *If OCGA § 9-3-33.1 (d) (1) would provide a shorter limitation period than Quebec's prescriptive period, the trial court did not err in determining that the Georgia statute applies to acts that occurred in Quebec.*

The Harveys argue that the trial court misread OCGA § 9-3-33.1 (d) (1) to apply it to acts that allegedly occurred in Quebec. The Harveys argue that the trial court erred by focusing on the mens rea and actus rea elements of the torts rather than on the plain language of the revival statute, which, they argue, shows that acts that occurred outside of Georgia do not fall within the definition of childhood sexual abuse as that term is used in the statute. We agree with the Harveys that the trial court's analysis was wrong, but we disagree with their reading of the statute.

As applied to former paragraph (d) (1), "childhood sexual abuse" was defined as "any act committed by the defendant against

---

facts are not disputed, the question of whether the case is within the bar of the statute is one of law for the court" (citing *Morris v. Johnstone*, 172 Ga. 598, 605 (158 SE 308) (1931)).

24

the plaintiff which act occurred when the plaintiff was under 18 years of age and which act would be in violation of" several enumerated crimes as prohibited by Georgia statutes, including rape, child molestation, incest, sexual battery, and aggravated sexual battery. See OCGA § 9-3-33.1 (a) (1), (2).[10] The Harveys argue that only acts that were committed in Georgia would be in violation of Georgia statutes, so acts committed in Quebec do not fall within the meaning of childhood sexual abuse for purposes of former paragraph (d) (1).

When determining the meaning of a statute, we consider the text of the statute itself, because "[a] statute draws its meaning from its text." *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017) (citation and punctuation omitted). In construing a statute, the text must be given its "plain and ordinary meaning" according to "the context in which it appears," and reading it "in its

---

[10] To the extent OCGA § 9-3-33.1 (d) (1) applies to Merchan's claims, that paragraph revives only claims of *childhood* sexual abuse, so any acts that occurred after Merchan turned 18 years of age are time-barred and cannot be revived.

most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted).

The most natural and reasonable reading of the statutory definition of childhood sexual abuse is broad enough to cover acts that occurred outside of Georgia. The definition covers acts committed against the victim (1) when the victim was less than 18 years old and (2) "which *would be* in violation of" an enumerated statute. By using the phrase "would be," the legislature did not require that the acts *were* a violation of Georgia law at the time they occurred, which is how the Harveys read the statute. Instead, the "would be" language requires an assessment of past actions under the present set of circumstances, in this case whether those past acts would violate Georgia law. Implicit in this assessment is the assumption that the acts would be a violation of Georgia law if they occurred in Georgia. Moreover, nothing in the definition of childhood sexual abuse limits the statute's reach to crimes committed in Georgia.

The Harveys argue that the legislature's 2015 amendment to the definition of "childhood sexual abuse" in which the language "proscribed by" was replaced with "in violation of" reflects the application of former paragraph (d) (1) only to acts that were committed in Georgia and that would actually violate Georgia statutes. The Harveys rely on the Black's Law Dictionary definitions of "violation" ("an infraction or breach of the law") and "proscribe" ("to outlaw or prohibit"), to argue that it is one thing "to describe acts as being prohibited by a criminal statute; it is another for those acts to actually be breaches of the statute." See Black's Law Dictionary (11th ed. 2019) (also defining "violation" as "[t]he act of breaking or dishonoring the law; the contravention of a right or duty").

It is true that "changes in statutory language generally indicate an intent to change the meaning of the statute." *Jones v. Peach Trader Inc.*, 302 Ga. 504, 514 (III) (807 SE2d 840) (2017) (citation and punctuation omitted). But that general rule has no application here, where the cited amendment to the definitional

27

subsection was merely a reorganization to make that subsection more readable and to set out more clearly what criminal statutes were relevant to determining what constituted childhood sexual abuse. See Ga. L. 2015, p. 689, § 2. The distinction between "proscribed by" and "in violation of" is immaterial in this context, as the phrase "proscribed by" does not contain an expansive territorial scope missing from "in violation of"; neither phrase speaks to a territorial reach.

The Harveys also make a passing reference to statements in *Auld* that Georgia statutes are presumed to have no extraterritorial application. See *Auld*, 309 Ga. at 897 (2) (b). In *Auld*, this Court relied in part on *Selma, Rome and Dalton R. Co. v. Lacy*, 43 Ga. 461 (1871), and described *Selma* as holding that "Georgia courts could not administer Georgia's wrongful death statute to [a] claim arising from [a] death that occurred in Alabama." *Auld*, 309 Ga. at 897 (2) (b). But the wrongful death statute at issue in *Selma* governed substantive, not procedural, rights. The *Selma* court declined to recognize a cause of action for acts occurring in Alabama when the

common law did not allow a wife to recover damages from the wrongful death of her husband, Georgia allowed such a claim only by virtue of a statute, and the wife did not show that Alabama law contained a similar provision. See *Selma*, 43 Ga. at 462-463. In other words, the *Selma* court would not create a cause of action for an act occurring extraterritorially when the plaintiff failed to show that the foreign jurisdiction itself would recognize the claim pursued by the plaintiff. See id. at 463 ("If it had been affirmatively shown that the law of the foreign jurisdiction in which the injury was done, was similar to that of our own as to the alleged cause of action, then it would have presented a different question.").

The statute at issue here is unlike the statute in *Selma*. Applying OCGA § 9-3-33.1 to acts that occurred in Quebec would not create a substantive cause of action unrecognized under Quebec law, at least as represented to us thus far. Instead, former paragraph (d)(1) is simply a procedural rule governing the limitations period for causes of action based on childhood sexual abuse already recognized under the law. Consequently, construing "childhood sexual abuse"

29

to encompass acts that occur outside of Georgia's borders does not run afoul of the rule enunciated in *Selma*.[11] But consistent with what we said above about the limitations period, if Quebec law provides a shorter limitations period that expired prior to June 30, 2015, former paragraph (d) (1) cannot revive those claims, because the cause of action would have been permanently extinguished by the expiration of the Quebec limitations period.

4. *The Harveys' constitutional challenges to OCGA § 9-3-33.1 (d) (1) fail.*

The Harveys argue that by reviving all claims that had expired prior to enactment of the statute, former paragraph (d) (1) violates both the Georgia Constitution's prohibition against ex post facto laws and their due process rights under the federal and state

_____

[11] Because we reject the defendants' argument that OCGA § 9-3-33.1 (d) (1) applies only to acts that occurred in Georgia, there is no merit to the defendants' argument that they are entitled to summary judgment based on Merchan's purported admission that all of the tortious acts occurred in Quebec. In any case, the defendants rely on Merchan's deposition to argue that she admitted that all abuse ended when the family moved to Georgia when she was 15 years old. But in the cited portions of her deposition, Merchan merely said that certain conduct stopped in Georgia and that "the more physical things died down" and were not "as prevalent"; she did not say that the physical abuse ended altogether.

constitutions. The Harveys also argue that former paragraph (d) (1) violates their equal protection rights under the federal and state constitutions. We disagree.

(a) *The revival of claims provided by OCGA § 9-3-33.1 (d) (1) does not violate the Georgia Constitution's prohibition against retroactive laws.*

The Harveys concede that our precedent forecloses their argument that former paragraph (d) (1) violates Georgia's constitutional prohibition against retroactive laws. See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed."). As explained above, statutes of limitations are generally procedural rules (rather than substantive ones). See, e.g., *Auld*, 309 Ga. at 895 (2) (a); see also *Polito v. Holland,* 258 Ga. 54, 55 (3) (365 SE2d 273) (1988) ("Procedural law is that law which prescribes the methods of enforcement of rights, duties, and

31

obligations."). "Ordinarily, there is no constitutional impediment to giving retroactive effect to statutes that govern only procedure of the courts." *Hunter v. Johnson*, 259 Ga. 21, 22 (2) (376 SE2d 371) (1989). And we have specifically held that enacting a new limitation period that revives civil claims barred by a previous limitation period does not violate Georgia's constitutional prohibition against retroactive laws. See, e.g., *Vaughn v. Vulcan Materials Co.*, 266 Ga. 163, 164 (1) (465 SE2d 661) (1996); *Canton Textile Mills, Inc. v. Lathem*, 253 Ga. 102, 105 (1) (317 SE2d 189) (1984). In *Canton*, we expressly adopted the reasoning of United States Supreme Court cases providing that statutes of limitations are subject to "'a relatively large degree of legislative control,'" the legislature's choices in this respect reflect public policy considerations, and the protection afforded by such statutes have "'never been regarded'" as a "'fundamental right.'" *Canton*, 253 Ga. at 105 (1) (quoting *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (65 SCt 1137, 89 LE 1628) (1945); citing *Campbell v. Holt,* 115 U.S. 620 (6 SCt 209, 29 LE 483) (1885)).

The Harveys argue that we should overrule that precedent because it is in conflict with the law of other states that have concluded that revival legislation was constitutionally invalid, including under provisions of other state constitutions that prohibit retroactive legislation. Specifically, the Harveys cite an opinion from a federal district court holding that a Kansas revival statute was unconstitutional because it interfered with vested rights of the defendant and, thus, violated due process.[12] See *Waller v. Pittsburgh Corning Corp.*, 742 FSupp. 581, 583-584 (D. Kan. 1990). But *Waller* noted that many courts, including Georgia's, have concluded that

---

[12] The Harveys' due process argument also relies on *Stogner v. California*, 539 U.S. 607 (123 SCt 2446, 156 LE2d 544) (2003), where the United States Supreme Court struck down a state statute that authorized certain criminal prosecutions after the previous limitations period had expired. *Stogner* concluded that the statute violated the Ex Post Facto Clause of the United States Constitution. See 559 U.S. at 621. *Stogner*'s analysis does not apply here, because it is well-established that the Ex Post Facto Clause of the United States Constitution applies only to criminal laws that retroactively impose or increase criminal punishment. See *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (115 SCt 1597, 131 LE2d 588) (1995) ("[T]he Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." (citation and punctuation omitted)); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (72 SCt 512, 96 LE 586) (1952) ("It always has been considered that that which [the Ex Post Facto Clause] forbids is penal legislation which imposes or increases criminal punishment for conduct lawful previous to its enactment.").

state revival legislation does not offend due process. See id. at 584 (citing *Canton Textile Mills*). In providing a survey of jurisdictions, the *Waller* court did not expound on whether states like Georgia were right or whether the contrary view was correct, but merely applied Kansas constitutional law to the question at issue. See id. Like the court in *Waller*, the Harveys simply point to case law that differs from Georgia's without explaining whether our case law is wrong. The mere fact that other states have construed their state laws differently is insufficient reason to reconsider our own precedent. See *Elliott v. State*, 305 Ga. 179, 195-209 (III) (B), (C) (824 SE2d 265) (2019) (adhering to our construction of Georgia's constitutional self-incrimination provision, even though it was broader in scope than many other jurisdictions because there was no showing that the construction was wrong).

(b) *OCGA § 9-3-33.1 does not violate the Harveys' equal protection rights under either the United States or Georgia Constitution.*

We also reject the Harveys' argument that OCGA § 9-3-33.1 violates the equal protection clauses of the United States and Georgia Constitutions.[13]

In analyzing an equal protection challenge, the first step is deciding what level of scrutiny to apply to the statute. "If neither a suspect class nor a fundamental right is implicated, the most lenient level of judicial review — 'rational basis' — applies." *Harper v. State of Ga.*, 292 Ga. 557, 560 (1) (738 SE2d 584) (2013) (citation omitted). The Harveys are not in a suspect class, but they argue that their fundamental right to due process was infringed by the statute

---

[13] The trial court did not distinguish between the state and federal Constitutions in analyzing the Harveys' equal protection claims, and we have occasionally said, without any analysis, that the equal protection clauses of the federal and Georgia Constitutions are "coextensive." See, e.g., *Harper v. State of Ga.*, 292 Ga. 557, 560 (1) (738 SE2d 584) (2013); *Grissom v. Gleason*, 262 Ga. 374, 376 (2) (418 SE2d 27) (1992). Of course, the United States Supreme Court's construction of a federal constitutional provision does not bind our construction of a similar Georgia constitutional provision, which must be construed independently in the light of the Georgia provision's text, context, and history. See *Elliott*, 305 Ga. at 187-189 (II) (C). But neither party makes an argument that the equal protection clause under Georgia's Constitution should be construed differently than the parallel provision in the United States Constitution. Therefore, we decline to consider in this case whether the state provision should be considered any differently than the federal provision.

because it impaired their vested right of defense. The Harveys again rely on *Waller* for this point, but as we concluded above, *Waller* does not control Georgia law. Georgia law is clear that a defendant has no vested right in a statute of limitations period. OCGA § 9-3-33.1 (d) (1) therefore does not implicate a fundamental right, and we therefore apply the rational basis test.

Under that test, the Harveys bear the burden of establishing that they are treated differently than "similarly situated" individuals and that "there is no rational basis for such different treatment." *Harper*, 292 Ga. at 560 (1) (citation omitted). Under federal rational basis review, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe*, 509 U.S. 312, 320 (113 SCt 2637, 125 LE2d 257) (1993). And because statutes are presumed to be constitutional, the party challenging the law must negate every conceivable basis that might support it. See id. at 320-321. The Harveys have not carried their burden in showing that the statute violates equal protection.

The Harveys argue that OCGA § 9-3-33.1 treats defendants alleged to have committed acts of childhood sexual abuse differently depending on when the offense occurred. The Harveys argue that they are afforded less protections than certain defendants who are sued in actions governed by paragraph (b) (2), which applies to childhood sexual abuse acts that occurred on or after July 1, 2015. Former paragraphs (d) (1) and (b) (2) appear to treat plaintiffs, not defendants, differently, by imposing some evidentiary burdens on certain plaintiffs who sue under paragraph (b) (2).[14]

Even if the different treatment of plaintiffs means that similarly situated defendants also are treated differently, the Harveys fail to "negate every conceivable basis that might support" the different treatment. The trial court noted that there were several conceivable and rational explanations for the different

---

[14] For acts that occurred on or after July 1, 2015, a plaintiff must file suit before the plaintiff turns 23 years old, or "[w]ithin two years from the date that the plaintiff knew or had reason to know of such abuse and that such abuse resulted in injury to the plaintiff as established by competent medical or psychological evidence," and a trial court must hold a pretrial hearing to determine when the plaintiff discovered the alleged sexual abuse. OCGA § 9-3-33.1 (b) (2) (A), (B). Paragraph (b) (2) does not impose any requirements on a defendant.

treatment, including that the General Assembly chose to allow older claims to be revived because the widespread and long-term damage from childhood sexual abuse had not historically been understood, and that, by imposing certain evidentiary burdens for claims accruing on or after July 1, 2015, the General Assembly was putting victims and victim advocates on notice of the need for such evidence in order to pursue their claims while acknowledging that the same type of evidence is unlikely to be available for claims accruing before July 1, 2015. The Harveys do not rebut these reasonable explanations and instead say on appeal that such explanations do not survive strict scrutiny analysis. But strict scrutiny review does not apply here, and the Harveys' equal protection claim fails.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

Decided June 21, 2021.

OCGA § 9-3-33.1; constitutional question. Carroll Superior Court. Before Judge Hamrick.

*Candace E. Rader; Shadrix Lane & Parmer, Met M. Lane*, for appellants.

*Esther D. F. Panitch; Wilbanks Cease Clinic, Brian J. Atkinson, Emily M. Hetherington, Devin L. Mashman*, for appellee.

*Paul E. Weathington; Lyle G. Warshauer; Penn Law, Darren W. Penn, Kevin M. Ketner; Kazmarek Mowrey Cloud Laseter, Jacqueline O. Eisermann, Richard A. Horder*, amici curiae.