**THIRD DIVISION**
**DOYLE, P. J.,**
**DILLARD, P.J. and PADGETT, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 8, 2025**

# In the Court of Appeals of Georgia

A25A0947, A25A0953. BIBLE et al. v. CITY OF ROSWELL; and vice versa.

PADGETT, Judge.

This is a class-action suit brought by firefighters against the City of Roswell regarding their entitlement to certain employment benefits. In Case No. A25A0953, the City appeals from the trial court's denial, in part, of its motion for summary judgment. In Case No. A25A0947, the plaintiffs appeal from the trial court's grant of the City's motion to dismiss their second amended complaint and also challenge the court's ruling on summary judgment. For the reasons that follow, in Case No. A25A0953, we reverse in part and vacate in part and remand the case to the trial court, and in Case No. A25A0947, we affirm.

This is the second appearance of this action before our Court. See *City of Roswell v. Bible*, 351 Ga. App. 828 (833 SE2d 537) (2019). As relevant to these appeals, "[i]n 2000, the City converted from a system of employing mostly full-time firefighters – with some reliance on volunteer firefighters – to a system of employing a significant number of 'part-time' firefighters who are not entitled to the same benefits as full-time City employees." Id. at 828. David Bible and Brian Rogers worked for the City's Fire Department from 1992 until 2017, and from 2006 to 2018, respectively. Id. at 828. In August 2017, Bible and Rogers filed suit against the City seeking to represent a class of similarly-situated firefighters, claiming that although they worked at least 40 hours per week, they were improperly classified as part-time, which deprived them of full-time employee benefits under the City's Human Resources Policies and Procedures Manual ("Policy Manual").[1] Specifically, they sought retirement benefits under the City's Defined Benefit Pension Plan, which covered employees prior to March 1, 2011, and the City's Defined Contribution Plan, which covered employees hired on or after March 1, 2011. In their action, the plaintiffs asserted claims for breach of contract based on the Policy Manual, breach of the duty

---

[1] The Policy Manual was first adopted in 1983 and has been revised numerous times since then.

of good faith and fair dealing, quantum meruit, declaratory judgment, and attorney fees and expenses. The trial court certified the proposed class as "[a]ll persons currently and/or formerly employed as firefighters by the Roswell Fire Department between August 29, 2011 and the date of the filing of the Complaint (inclusive), who worked forty (40) or more hours per standard workweek, but did not receive the benefits conferred upon regular full time employees." *Bible*, 351 Ga. App. at 829-830. This Court affirmed that ruling on appeal. See id. at 828.

Following extensive discovery, the plaintiffs filed a motion for partial summary judgment, and the City filed a motion for summary judgment. In their respective motions, the parties sought rulings on, inter alia, whether the Policy Manual constituted an employment contract and whether the City had breached the Policy Manual.

In April 2023, the trial court entered its initial ruling on those motions, denying the plaintiffs' motion for partial summary judgment and granting, in part, the City's motion. The trial court granted the City summary judgment as to the plaintiffs' claims for breach of contract arising from the Defined Benefit Pension Plan, finding that those claims accrued in March 2011, when that plan was no longer available to new

entrants. Accordingly, the trial court found that the claims arising from the Defined Benefit Pension Plan were barred by the six-year statute of limitation[2] because the complaint was not filed until August 2017. The trial court specifically found that the Policy Manual was "a valid and enforceable contract" but that the terms of the contract and whether there was a breach of the contract required resolution by a finder of fact and, as such, denied both parties' requests for summary judgment as to these issues. However, on May 14, 2024, the trial court amended its 2023 summary judgment order, clarifying that it had not intended to include language indicating that it had determined that the Policy Manual was a contract, but rather that factual issues remained regarding the "terms, applicability, and alleged breach of the Policy Manual[.]"

The City filed an application for interlocutory review of the trial court's amended order on summary judgment, which this Court granted, and the City filed its appeal in Case No. A25A0953.

---

[2] See generally OCGA § 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable.").

4

Shortly after the trial court issued its 2023 summary judgment order, the plaintiffs filed a second amendment to their class action complaint,[3] seeking to add additional claims for breach of the contract between the City and the Georgia Municipal Employees Benefit System, which the plaintiffs asserted were subject to a 20-year statute of limitation. The trial court, however, granted the City's motion to dismiss the second amendment. The plaintiffs thereafter filed an application for interlocutory review from the court's order dismissing the second amended complaint, which this Court also granted. In Case No. A25A0947, the plaintiffs appeal from the trial court's order granting the motion to dismiss, as well as the court's prior ruling on summary judgment.

*Case No. A25A0953*

1. We first consider the City's claims of error. The City contends that it is entitled to summary judgment on the plaintiffs' breach-of-contract claims arising from any alleged breach of the Policy Manual because the Policy Manual does not constitute a valid, enforceable contract and, even if the Policy Manual constituted an

---

[3] The trial court granted the City's motion for judgment on the pleadings as to the plaintiffs' first amended complaint, and that ruling is not at issue in these appeals.

employment contract, it has established as a matter of law that it did not breach the Policy Manual's terms. We agree.

Whether the Policy Manual constitutes an employment contract is a legal issue. *O'Connor v. Fulton County*, 302 Ga. 70, 71 (1) (805 SE2d 56) (2017). See *Stankovich v. Axis Ins. Co.*, 365 Ga. App. 877, 877 (880 SE2d 366) (2022) ("Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.") (punctuation and footnote omitted). "On appeal from the ruling on a motion for summary judgment, this court reviews questions of law de novo. In so doing, we owe no deference to the trial court's legal analysis or legal conclusions."*Atlanta Dev., Inc. v. Emerald Capital Investments, LLC*, 258 Ga. App. 472, 477 (1) (574 SE2d 585) (2002) (citations omitted). Of course, we construe the evidence in the light most favorable to the nonmovant. *Stankovich*, 365 Ga. App. at 877.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. Of course, the "cardinal rule of contract construction is to ascertain the intention of

the parties, as set out in the language of the contract." *Certain Underwriters at Lloyds, London v. SRNG LLC*, 374 Ga. App. 340, 343 (2) (a) (912 SE2d 714) (2025) (citation and punctuation omitted).

> Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Id. at 343-344 (2) (a) (citation omitted).

As a general rule, "the policies and information in personnel or employee manuals neither create a contract, nor support a claim for breach of contract." *O'Connor*, 302 Ga. at 71 (1) (citations and punctuation omitted). However, under some circumstances "[p]rovisions in an employee manual relating to additional compensation plans, of which an employee is aware, may amount to a binding contract between the parties[.]" Id. at 71 (1) (citation and punctuation omitted). See also

*Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981) ("an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them").

Here, the various versions of the Policy Manual as well as the City's resolutions adopting the Policy Manuals, dating back to 1983, all included contract disclaimer language that the Policy Manual does not constitute an employment agreement or contract. For example, the 2002 version of the Policy Manual stated that it was "intended solely to provide employees with information and guidance as to the City's present policies and procedures" and was "not an employment agreement or employment contract[.]" Furthermore, both named plaintiffs acknowledged that they received letters accompanying the Policy Manual, which stated that the Policy Manual "is intended for informational purposes" and disclaimed any employment contract.

This Court has held that an employee handbook is not a contract when it contains such disclaimer language.[4] See, e.g., *Gale v. Hayes Microcomputer Products,*

---

[4] Federal courts interpreting Georgia law have also found such disclaimers "to be dispositive of the employee's attempt to bring a breach of contract claim arising out of employee handbooks." *Anderson v. DataPath, Inc.*, 2022 WL 17069583, at *14-15 (III) (B) (1) (N.D. Ga., Feb. 25, 2022). See also *Obester v. Lucas Assocs.*, 2010 WL 8292401, at *12-13 (III) (A) (1) (a) (N.D. Ga., Aug. 2, 2010) (finding that contract disclaimer language demonstrated clear intent not to be bound by terms of handbook

*Inc.*, 192 Ga. App. 30, 30-31 (1) (383 SE2d 590) (1989) (affirming trial court's grant of summary judgment on employee's claim for breach of contract when "the employee handbook by its specific terms was not a contract" and did not limit the employer's right to terminate the employment). See also *Shelnutt v. Mayor & Aldermen of City of Savannah*, 333 Ga. App. 446, 449 (1) (776 SE2d 650) (2015) (enforcing a pay policy document because it was separate from the employee handbook which contained contract disclaimer language).

The trial court, however, found that the Policy Manual could be a valid and enforceable contract despite its disclaimer language, relying on this Court's decision in *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595 (417 SE2d 163) (1992). But *Metzger* did not enforce the provisions of an employee handbook with a contract disclaimer. In that case, two versions of the employee handbook were at issue: the version in effect when the plaintiff was hired (which lacked a contract disclaimer), and the version in effect at the time that the employee was injured on the job (which included a contract disclaimer). Id. at 596-597 (2). This Court held that the handbook in effect "at the time [the plaintiff] accepted employment"—without a contract

and, therefore, plaintiff could not establish valid contract under Georgia law), adopted in relevant part 2010 WL 8304884 (N.D. Ga., Sept. 7, 2010).

disclaimer—was the operative handbook for purposes of the plaintiff's claim. Id. at 597 (2). Thus, *Metzger* does not support the trial court's conclusion that an enforceable contract can be found despite disclaimer language. In this case, all of the different versions of the Policy Manual, including those in effect when the plaintiffs were hired, contained contract disclaimers.

The City also argues that the Policy Manual was not a contract because it could be amended at will by the City. Since 1983, the Policy Manual, as well as the resolutions implementing it, stated that it could be amended by the City Council at any time. The July 2002 version stated that the "City reserves the right to amend, modify, change, replace, suspend, or cancel any of its policies and procedures, including this Manual, at any time, with or without notice, for any reason or no reason[.]" Once again, both named plaintiffs acknowledged receiving letters from the City which accompanied the Policy Manual and stated that the Policy Manual was subject to review and change by the City at any time. See OCGA § 13-1-1 ("A contract is an agreement between two or more parties for the doing or not doing of some specified thing.").

Given these provisions, we are not convinced that the Policy Manual constitutes a valid contract between the City and the plaintiffs under OCGA § 13-3-1.[5] But even if the Policy Manual constituted a valid employment contract, the City has established as a matter of law that it did not breach the Policy Manual.

Here, the version of the Policy Manual in effect at the beginning of the class period in 2011 explicitly applied only to "regular full-time employees of the City" and excepted "part-time employees[.]" As relevant here, this version of the Policy Manual provided that:

---

[5] In a different case involving the City's personnel rules, this Court held that the resolution adopting the Policy Manual was adopted in compliance with the City's charter, such that it was "valid and of force." *Atkinson v. City of Roswell*, 203 Ga. App. 192, 194 (2) (416 SE2d 550) (1992). To the extent that the plaintiffs and the trial court rely on *Atkinson* to find that the Policy Manual constitutes a contract, it does not appear that the *Atkinson* court had the benefit of the Policy Manual's disclaimer language, nor that the City claimed that the disclaimer language defeated the breach-of-contract claims at issue in the *Atkinson* case. See *Atkinson*, 203 Ga. App. 192 (containing no discussion of any disclaimer). Because it does not appear that this Court considered the disclaimer provision in *Atkinson*, that case cannot stand for the proposition that the Policy Manual constitutes an employment contract despite same. See generally *Med. Ctr. of Central Ga., Inc. v. Turner*,___ Ga. ___ (Case No. S25G0132, decided June 24, 2025) (explaining that "a court cannot reach a decision on a particular issue when that issue is not presented or implicated by the factual context of the case being decided" and that "language that sounds like a holding – but actually exceeds the scope of the case's factual context – is not a holding no matter how much it sounds like one") (citation and punctuation omitted).

[r]egular positions may be established either on a full-time or part-time basis. . . . An employee whose standard workweek is forty hours or more is a regular full-time employee. An employee whose standard workweek is less than forty hours per week is a part-time employee. A person appointed to a part-time position shall not be eligible for the privileges and benefits conferred through the [Policy Manual] to regular full-time City employees.

In contrast, the version of the Policy Manual adopted on June 9, 2014, applied to "all employees of the City." However, the 2014 Policy Manual provided: "A person appointed to a part-time position shall not be eligible for the privileges and benefits conferred through the [Policy Manual] to regular full-time City employees." Specifically, only full-time employees were entitled to retirement and other employee benefits.

It is undisputed that the plaintiffs were hired into and employed in part-time positions. Bible testified that as of 2002, he and the other part-time firefighters were designated as part-time employees. Rogers testified that he was hired and worked as a part-time firefighter. Personnel records indicated that the plaintiffs were part-time. Job postings indicated that their roles were advertised as part-time.

Notably, the City did not require part-time firefighters to work a full-time firefighter schedule of 24 hours on/48 hours off, nor were they were required to work 40 hours per week. Rather, part-time firefighters were required to work one twelve-hour weekday shift per week and one twelve-hour weekend shift per week. They were not required to be on-call, they were not subject to being held over, and they were not required to work if they were unavailable. And they indicated when they were available to work. If any part-time firefighter chose to work more than the minimum requirement, they did so voluntarily.

Although many firefighters in part-time positions often worked more than 40 hours per week, the undisputed facts show that the plaintiffs were employed in part-time *positions* and worked extra hours voluntarily. Even if the City's scheduling of part-time firefighters to work additional hours without extending to them the benefits of full-time employment was unfair in some broad sense, "we are not at liberty to ignore the specific terms of the parties' written agreement and rewrite or revise a contract under the guise of construing it." *Copeland v. Home Grown Music, Inc.*, 358 Ga. App. 743, 750 (1) (856 SE2d 325) (2021) (punctuation and footnote omitted). See *Wilson Indus. Elec., Inc. v. Cincinnati Ins. Co.*, 246 Ga. App. 90, 92 (539 SE2d 612)

(2000) (explaining that "we must give full effect to . . . plain terms" of a contract even if terms are beneficial to one party and detrimental to the opposing party). The clear terms of the Policy Manual show that part-time positions were not eligible for retirement or other benefits. As such, the City is entitled to summary judgment on the plaintiffs' claims for breach of contract under the Policy Manual. See, e.g., *Samdperil v. Watson*, 359 Ga. App. 129, 131 (1) (856 SE2d 768) (2021) (affirming grant of summary judgment to holder of promissory note when plain terms of note required promissee to make certain payments); *Bd. of Commrs. of Crisp County v. City Commrs. of City of Cordele*, 315 Ga. App. 696, 701 (727 SE2d 524) (2012) (when the "plain terms of the contract" precluded party from seeking compensation for performance of services, the trial court properly granted summary judgment to opposing party).

2. The City also argues that it is entitled to summary judgment on the plaintiffs' claims for breach of the covenant of good faith and fair dealing, quantum meruit, declaratory judgment, and attorney fees and expenses.

(a) The plaintiffs concede that they "do not assert a separate claim for breach of the implied covenant of good faith and fair dealing apart from the breach of contract action." Similarly, the plaintiffs characterize their declaratory judgment action as a

"remedy" to "the City's breach of contract." Accordingly, because the City is entitled to summary judgment on the plaintiffs' claim for breach of contract, it is also entitled to summary judgment on the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and declaratory judgment.

(b) With regard to the plaintiffs' alternative claim for quantum meruit,[6] the trial court found that there was no factual basis for this claim due to the employment contract between the parties. See generally *Williams v. City of Atlanta*, 281 Ga. 478, 480 (3) (640 SE2d 35) (2007) (holding that plaintiff's contract claim precluded plaintiff's action for quantum meruit). The City contends that although the trial court granted summary judgment to the City on this issue, the court did so because it "mistakenly deemed" the Policy Manual a contract. On appeal, the City contends that it is nevertheless entitled to summary judgment on the plaintiffs' claim for quantum meruit both because the claim is barred by sovereign immunity and because it lacks merit. But this Court "is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it." *9766, LLC v. Dwarf House, Inc.*, 331 Ga.

---

[6] Quantum meruit "is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby." *Memar v. Jebraeilli*, 303 Ga. App. 557, 560 (1) (694 SE2d 172) (2010) (punctuation omitted).

15

App. 287, 291 (4) (b) (771 SE2d 1) (2015) (citation and punctuation omitted). Accordingly, we vacate the trial court's ruling on the plaintiffs' claim for quantum meruit and remand the matter to the trial court to reconsider the parties' arguments regarding this claim in the first instance. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (explaining that an appellate court has discretion to return "the case to the trial court [to] allow the trial court to issue rulings on grounds advanced, which could then serve as a basis for appellate review").

(c) Finally, with regard to the plaintiffs' remaining claim for attorney fees and expenses, this claim is derivative of any substantive claims, and the trial court should also reconsider this ruling on remand. See *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 110 (3) (854 SE2d 756) (2021) (explaining that where underlying claim survives summary judgment, derivative claim for attorney fees also survives).

Accordingly, the trial court's denial, in part, of the City's motion for summary judgment as to the plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment is reversed. The trial court's partial grant of the City's motion for summary judgment as to the plaintiffs' claim for quantum meruit is vacated and remanded, as is the trial court's denial, in

16

part, of the City's motion for summary judgment as to the plaintiffs' claim for attorney fees.

*Case No. A25A0947*

3. Turning to the plaintiffs' appeal, with regard to the trial court's ruling on the cross motions for summary judgment, the plaintiffs contend that the trial court erred in denying their motion for partial summary judgment and granting, in part, the City's motion for summary judgment on the basis that the plaintiffs' claims based on entitlement to the Defined Benefit Pension Plan were barred by a six-year statute of limitation. As set forth above in Division 1, having concluded that the City is entitled to summary judgment on the plaintiffs' claim for breach of contract based on the Policy Manual, the trial court did not err in granting, in part, the City's motion for summary judgment on this issue.

4. Finally, the plaintiffs contend the trial court erred in dismissing their second amended complaint. We disagree.

This Court reviews de novo a trial court's ruling on a motion to dismiss, "accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff." *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020) (citation and punctuation omitted).

As set forth above, shortly after the trial court issued its original 2023 summary judgment order, the plaintiffs filed a second amendment to their class action complaint, seeking to add additional claims for breach of the contract between the City and the Georgia Municipal Employees Benefit System ("GMEBS"). According to the plaintiffs, the contract consisted of the City's retirement plan, the ordinance amending and restating the City's retirement plan, and the joint trust agreement between the City and GMEBS. Furthermore, the plaintiffs asserted that these additional claims were subject to a 20-year statute of limitation both because the GMEBS contract, the retirement plan, the attendant ordinance, and the joint trust agreement were signed and executed under seal and because the benefits were guaranteed by statute. In granting the City's motion to dismiss the additional claims, the trial court found that the plaintiffs could not assert a new, longer statute of limitation after it had already granted partial summary judgment to the City and

"held, as a matter of law, that the plaintiffs had no claim under the Defined Benefit [Pension] Plan" because the applicable six-year statute of limitation had passed. The trial court further found that even if the additional claims were not foreclosed by its prior ruling on summary judgment, the 20-year statute of limitation did not apply.

"[E]ach party at the hearing on the motion for summary judgment has a duty to present his case in full, and the party against whom summary judgment has been granted is in the same position as if he suffered a verdict against him." *McDaniel v. City of Griffin*, 281 Ga. App. 350, 352 (1) (636 SE2d 62) (2006) (footnote omitted) (citing *Summer-Minter & Associates, Inc. v. Giordano*, 231 Ga. 601, 604 (203 SE2d 173) (1974)). "Because summary judgment is an adjudication on the merits, once entered, a party is not free to amend its pleadings." *McDaniel*, 281 Ga. App. at 352 (1).

Here, in its motion for summary judgment, the City asserted that "[a]ny relief" under the Defined Benefit Pension Plan was barred by the six-year statute of limitation. In response to the City's motion for summary judgment, the plaintiffs argued that their "claim for damages associated with the Georgia Municipal Employees Benefit System Defined Benefit Retirement Plan . . . was not barred" by the statute of limitation, as the City argued. Furthermore, the plaintiffs conceded that

19

the six-year statute of limitation applied to their breach-of-contract claims. The plaintiffs nevertheless argue that the claims for breach of contract in the second amended complaint were for "breach of a wholly different contract." But given the particular facts of this case, the plaintiffs' argument is not tenable as it appears that any breach of the GMEBS Defined Benefit Pension Plan was intertwined with their original claim for breach of contract under the Policy Manual. As such, the trial court did not err in granting the City's motion to dismiss the plaintiffs' additional claims under the GMEBS contract. See *Harvey v. Merchan*, 311 Ga. 811, 819 (2) (b) (i) (860 SE2d 561) (2021) ("A plaintiff may not amend the complaint after losing at the summary judgment stage because the plaintiff has a duty to present her case in full in opposing the summary judgment motion or run the risk of an adjudication against her."); *Giordano*, 231 Ga. at 605 (holding that "restyling the complaint in terms of a theory of recovery ascertainable in the original case did not cause the case to survive

the prior adjudication on the merits").[7] Accordingly, the trial court's grant of the City's motion to dismiss the plaintiffs' second amended complaint is affirmed.

*Judgment affirmed in A25A0974; judgment reversed in part and vacated in part and case remanded in A25A0953. Doyle, P. J., and Dillard, P. J., concur.*

---

[7] The plaintiffs also contend that the GMEBS contract claim was subject to a 20-year statute of limitation as a local legislative enactment and because it is a contract under seal. Having held that the plaintiffs were foreclosed from amending their complaint to add the GMEBS contract claim, we need not consider what statute of limitation would apply to such a claim.